92 P.3d 202 (2004)
151 Wash.2d 689
STATE of Washington, Respondent,
v.
James Bruce RANKIN, Petitioner.
State of Washington, Respondent,
v.
Kevin D. Staab, Petitioner.
No. 72509-8.
Supreme Court of Washington, En Banc.
Argued January 23, 2003.
Decided June 10, 2004.
*203 Washington Appellate Project, Sharon Blackford, Seattle, Nielsen, Broman & Assoc., Eric Nielsen, Seattle, for Petitioner.
James Krider, Snohomish County Prosecutor, Seth Fine and Charles Blackman, Deputies, Everett, Norm Maleng, King County Prosecutor, Daniel Clerk, Deputy, Seattle, for Respondent.
Tom P. Conom, Edmonds, for Amicus Curiae, Washington Association of Criminal Defense Lawyers.
ALEXANDER, C.J.
The principal issue we are asked to resolve in this consolidated case is this: whether a police officer violates article I, section 7 of the Washington Constitution when the officer requests identification from a passenger in a lawfully stopped vehicle but lacks an articulable suspicion that the passenger has engaged in criminal activity. The Court of Appeals concluded that although an officer in such a circumstance cannot demand identification from a passenger, an officer does not violate the state constitution by merely requesting that the passenger produce identification. We disagree with the Court of Appeals, concluding that the aforementioned constitutional provision affords automobile passengers a right of privacy that is violated when an officer requests identification from a passenger for investigative purposes, absent an independent basis for making the request. The Court of Appeals must, therefore, be reversed in both cases before us.

I.

State v. Rankin
On September 17, 1999, a vehicle driven by Karena Gunn was stopped by a Snohomish County sheriff's deputy. The deputy did so because he observed Gunn's vehicle "roll over a marked stop line," a noncriminal traffic offense. Rankin's Clerk's Papers at 5. James Rankin was a passenger in Gunn's vehicle. Although the deputy did not observe Rankin engaged in any criminal activity on this occasion, he recalled that he had arrested Rankin approximately a month earlier for possession of a stolen vehicle and possession of controlled substances.
*204 The deputy requested Gunn's driver's license, and then asked Rankin if he had any identification on his person. Rankin and Gunn each responded by providing the deputy with identification cards. The deputy used the personal information from the cards to run a check to see if there were warrants outstanding for either of the individuals. He learned that there were no warrants for Gunn but that there was an outstanding warrant for Rankin's arrest for allegedly violating a no-contact order. Consequently, he placed Rankin under arrest. During a search incident to the arrest, the deputy discovered a knife and about one ounce of methamphetamine on Rankin.
Rankin was charged in Snohomish County Superior Court with possession of a controlled substance. Rankin then moved to suppress the evidence that was seized from him at the time of his arrest. The trial court granted the motion and suppressed the evidence, concluding that the encounter was a seizure. It then dismissed the case, concluding that the State possessed insufficient evidence to maintain the charges against Rankin.

State v. Staab
On March 3, 1999, an officer from the Tukwila Police Department stopped a vehicle for the traffic offense of not having a license plate light. The officer asked the driver and his passenger, Kevin Staab, to produce their driver's licenses. Staab testified that the officer "was not politely asking when he wanted to see my driver's license," an assertion that the officer did not deny. Staab Report of Proceedings at 41. When Staab reached into his shirt pocket for his identification card, a clear plastic bag containing a white chalky substance fell out. Staab then put the bag back in his pocket and told the officer his name. After determining that there were no outstanding warrants for Staab, the officer arrested Staab based on his belief that the plastic bag contained cocaine. Staab admitted to the officer that the bag contained approximately three grams of cocaine.
Staab was thereafter charged in King County Superior Court with a violation of the Uniform Controlled Substances Act, chapter 69.50 RCW. At a subsequent hearing on the admissibility of the cocaine, the trial court determined that an officer may ask a passenger for identification even if the officer lacks a reasonable suspicion that the passenger is engaged in criminal activity. Consequently, it denied Staab's motion to suppress the cocaine. Staab was later found guilty of the charge.

At the Court of Appeals
Staab appealed his conviction to Division One of the Court of Appeals. The State appealed the order suppressing evidence in Rankin's case to that same court. The Court of Appeals consolidated the appeals and held that while an officer may not require a passenger to provide identification, unless there are independent grounds to question the passenger, the officer may request identification. State v. Rankin, 108 Wash.App. 948, 951, 954, 33 P.3d 1090 (2001), review granted, 147 Wash.2d 1014, 56 P.3d 991 (2002). It, therefore, affirmed Staab's conviction and reversed the trial court's suppression of evidence in Rankin's case, remanding the latter case for trial.

II.
Rankin and Staab both contend that the officers' requests for identification violated article I, section 7 of the Washington Constitution. The determination of whether undisputed facts constitute a violation of that provision of the Washington Constitution is a question of law, which is reviewed de novo. State v. Thorn, 129 Wash.2d 347, 351, 917 P.2d 108 (1996), overruled on other grounds by State v. O'Neill, 148 Wash.2d 564, 62 P.3d 489 (2003). Here, the determinative facts of this case are not in dispute. Our review, therefore, is de novo.
"It is well settled that article I, section 7 of the Washington Constitution provides greater protection to individual privacy rights than the Fourth Amendment to the United States Constitution." State v. Jones, 146 Wash.2d 328, 332, 45 P.3d 1062 (2002). Therefore, we need not engage in an analysis under State v. Gunwall, 106 Wash.2d 54, 720 *205 P.2d 808 (1986). State v. White, 135 Wash.2d 761, 769, 958 P.2d 982 (1998).
The Washington Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." Const. art. I, § 7. This provision protects "those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass absent a warrant." State v. Myrick, 102 Wash.2d 506, 511, 688 P.2d 151 (1984). Indeed, a warrantless search or seizure is considered per se unconstitutional unless it falls within one of the few exceptions to the warrant requirement. State v. Ladson, 138 Wash.2d 343, 349, 979 P.2d 833 (1999). When analyzing police-citizen interactions, we must first determine whether a warrantless search or seizure has taken place, and if it has, whether the action was justified by an exception to the warrant requirement. O'Neill, 148 Wash.2d at 574, 62 P.3d 489. Here, the State does not contend that the encounters were justified by any exception to the warrant requirement. The State argues only that no seizure occurred.
"[N]ot every encounter between a police officer and a citizen is an intrusion requiring an objective justification." United States v. Mendenhall, 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). However, a seizure occurs, under article I, section 7, when considering all the circumstances, an individual's freedom of movement is restrained and the individual would not believe he or she is free to leave or decline a request due to an officer's use of force or display of authority. O'Neill, 148 Wash.2d at 574, 62 P.3d 489. This determination is made by objectively looking at the actions of the law enforcement officer. State v. Young, 135 Wash.2d 498, 501, 957 P.2d 681 (1998). Moreover, it is elementary that all investigatory detentions constitute a seizure. State v. Armenta, 134 Wash.2d 1, 10, 948 P.2d 1280 (1997).
An automobile passenger is not seized when a police officer merely stops the vehicle in which the passenger is riding. State v. Mendez, 137 Wash.2d 208, 222, 970 P.2d 722 (1999). Under article I, section 7, however, passengers are unconstitutionally detained when an officer requests identification "unless other circumstances give the police independent cause to question [the] passengers." State v. Larson, 93 Wash.2d 638, 642, 611 P.2d 771 (1980). In Larson, officers observed several individuals sitting in an illegally parked automobile. As the officers drove up to the parked automobile, the driver of the automobile began to drive it away. The officers then activated their emergency lights and stopped the automobile. Upon confronting the driver and his passengers, the officers "asked" for their identification. Id. at 640, 611 P.2d 771. When one of the passengers attempted to comply with the request by opening her purse to locate her identification, an officer observed a plastic bag of marijuana in the purse. After the passenger was arrested for possession of a controlled substance, she moved to suppress the evidence that was obtained as a result of "the request for identification." Id.
The trial court ordered suppression, reasoning that the police officers did not have any legal justification for "requesting" identification from the passenger. State v. Larson, 21 Wash.App. 506, 507, 587 P.2d 171 (1978). The Court of Appeals reversed the trial court's decision, determining that "the police may ask for identification from passengers as well as the driver." Id. at 509, 587 P.2d 171 (emphasis added). This court reversed the Court of Appeals, concluding
that the police officer who detained the petitioner for the purpose of requiring her to identify herself did so in violation of the fourth amendment to the United States Constitution and Const. art. 1, § 7, because none of the circumstances preceding the officer's detention of petitioner justified a reasonable suspicion that she was involved in criminal conduct.
Larson, 93 Wash.2d at 645, 611 P.2d 771. Although in Larson we referred to the officer's interaction as a "demand" in some sections of the opinion, the decision must be read in light of the facts of that case, which were that the officer merely "asked" the *206 passenger for the identification.[1]Id. at 640-41, 611 P.2d 771. Moreover, we determined that the officer's request for identification amounted to a "detention" of the passenger for investigative purposes. Id. at 645, 611 P.2d 771. As noted above, all investigative detentions[2] constitute seizures. Armenta, 134 Wash.2d at 10, 948 P.2d 1280.
The dissent[3] relies heavily on Young where we held that asking for identification from a pedestrian does not constitute a seizure. Young, 135 Wash.2d at 511, 957 P.2d 681. Significantly, Young did not overrule or even mention our decision in Larson. We think there are good reasons for making a distinction between pedestrians and passengers. As we have said, "`many [individuals] find a greater sense of security and privacy in traveling in an automobile than they do in exposing themselves by pedestrian or other modes of travel.'" City of Seattle v. Mesiani, 110 Wash.2d 454, 457, 755 P.2d 775 (1988) (quoting Delaware v. Prouse, 440 U.S. 648, 662, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)). Indeed, a passenger faced with undesirable questioning by the police does not have the realistic alternative of leaving the scene as does a pedestrian. As the noted commentator Professor LaFave observed, the passenger is forced to abandon his or her chosen mode of transportation and, instead, walk away into a frequently foreign location thereby risking the departure of his or her ride while away. See Wayne R. LaFave, The Present and Future Fourth Amendment, 1995 U. Ill. L.Rev. 111, 114-15. Despite the dissent's suggestions to the contrary, Larson is consistent with Young.
Washington is not alone in holding that a mere request for identification from a passenger for investigatory purposes constitutes a seizure unless there is a reasonable basis for the inquiry. In Commonwealth v. Alvarez, 44 Mass.App.Ct. 531, 692 N.E.2d 106 (1998), the Massachusetts Court of Appeals held that an unlawful seizure occurs when a law enforcement officer interrogates "passengers in [a] car unless the [law enforcement officer] has a `reasonable suspicion, grounded in specific, articulable facts,' that a particular passenger in the car is involved in criminal activity or `engaged in other suspicious conduct.'" Alvarez, 692 N.E.2d at 108 (quoting Commonwealth v. Torres, 424 Mass. 153, 158, 674 N.E.2d 638 (1997)). The court reasoned there that "a random request for identification papers constitutesthe sort of request uncomfortably associated with authoritarian societies and most commonly made of persons belonging to a racial or ethnic minority." Id. at 109; see also State v. Johnson, 645 N.W.2d 505, 510 (Minn.Ct.App.2002) (holding "a reasonable person would feel that he was neither free to disregard the police questions nor free to terminate the encounter" when a police officer requests identification from a passenger); Hornberger v. Am. Broad. Cos., 351 N.J.Super. 577, 613, 799 A.2d 566 (2002) (determining a passenger does not feel free to refuse an officer's request for identification); State v. Affsprung, 135 N.M. 306, 87 P.3d 1088, 1093 (2004) (concluding "we do not believe that a reasonable passenger would feel free to leave the area and refuse the officer's request for identification"), cert. denied, 88 P.3d 262 (N.M.2004).
Not all jurisdictions are in agreement on this issue. The Supreme Court of Colorado, for instance, has determined that there is no seizure under the Fourth Amendment when an officer requests identification from an automobile passenger. See People v. Paynter, 955 P.2d 68, 75 (Colo.1998). However, as noted above, the Washington Constitution affords individuals more protection than the Fourth Amendment, and we must always remain vigilant in guarding these civil rights *207 and refrain from hastily discarding them. Jones, 146 Wash.2d at 332, 45 P.3d 1062.
[W]hile the Fourth Amendment operates on a downward ratcheting mechanism of diminishing expectations of privacy, article I, section 7, holds the line by pegging the constitutional standard to `those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass absent a warrant.

Ladson, 138 Wash.2d at 349, 979 P.2d 833 (quoting Myrick, 102 Wash.2d at 511, 688 P.2d 151). In our view, there is no reason to abandon a right that passengers have enjoyed in this state since at least 1980 when such requests for identification from passengers were deemed by this court to be in violation of article I, section 7 of our state constitution. In the absence of a compelling justification for stripping this right from the people, our constitutional jurisprudence requires us to uphold this right. Id. Therefore, we conclude that under article I, section 7, law enforcement officers are not permitted to request identification from a passenger for investigatory purposes unless there is an independent basis to support the request.[4]
In each of the cases before us, a police officer asked a passenger for identification for the sole purpose of conducting a criminal investigation, notwithstanding the fact that the officer lacked any articulable suspicion of criminal activity. Applying Larson, we conclude that both individuals were seized as a matter of law when the officers made the request or demand for identification. Because both individuals were seized without the benefit of a warrant and the State does not contend that the seizures were justified by any exception to the warrant requirement,[5] the evidence obtained as a result of the seizures must be suppressed.

III.
In conclusion, we hold that the freedom from disturbance in "private affairs" afforded to passengers in Washington by article I, section 7 prohibits law enforcement officers from requesting identification from passengers for investigative purposes unless there is an independent reason that justifies the request. This is not to imply that officers may not engage passengers in conversation. They may do this. However, once the interaction develops into an investigation, it runs afoul of our state constitution unless there is justification for the intrusion into the passenger's private affairs. Because the Court of Appeals concluded otherwise, we reverse its decision to overturn the suppression of the evidence seized from Rankin as well as its affirmance of Staab's conviction.
JOHNSON, SANDERS, CHAMBERS and OWENS, JJ., concur.
FAIRHURST, J. (concurring in the majority).
I agree with the majority that the Court of Appeals should be reversed; however, I would confine the court's conclusion to the facts in this consolidated case and would clarify how the result could differ in other factual circumstances.
This matter involves two cases that raise the issue of whether a police officer requesting identification from a passenger in a vehicle who is merely present when the driver is legally stopped for a traffic infraction violates the passenger's privacy rights under article I, section 7 of the Washington Constitution.[1] To determine if an article I, section 7 violation occurred in the context of this case, I engage in a two-step inquiry. First, was the defendant unlawfully seized without a warrant? State v. O'Neill, 148 Wash.2d 564, 574, 62 P.3d 489 (2003). Second, does one of the *208 common law exceptions to the warrant requirement apply? State v. Ladson, 138 Wash.2d 343, 349, 979 P.2d 833 (1999).
The majority relies solely on State v. Larson, 93 Wash.2d 638, 611 P.2d 771 (1980), for the conclusion that a passenger's right of privacy is violated when an officer requests identification from the passenger during a traffic stop. I would hold that passengers Rankin and Staab were unlawfully seized because, based upon the objective circumstances, a reasonable passenger in the same traffic stop situation would not have felt free to refuse the officers' requests and end the encounter. State v. Young, 135 Wash.2d 498, 510, 957 P.2d 681 (1998) (citing United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). The officers violated article I, section 7 when they requested Rankin's and Staab's identification because they did not have an individualized articulable suspicion that the passengers were involved in criminal activityan element that is required under the Terry exception to the warrant requirement. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). I would hold the requests impermissible in these stops, but not necessarily impermissible in other circumstances.
A. Were Rankin and Staab unlawfully seized without a warrant?
Under article I, section 7, a person is seized when, in view of all the objective circumstances, a reasonable person would not feel free to leave. Young, 135 Wash.2d at 510, 957 P.2d 681. In a police-questioning context, this means that a seizure occurs if a reasonable person would not feel free to refuse the officer's request for identification and end the encounter. O'Neill, 148 Wash.2d at 574, 62 P.3d 489 (citing Florida v. Bostick, 501 U.S. 429, 436, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)).[2]
The federal courts and two divisions of the Washington Court of Appeals have recognized that an officer's detaining of a passenger during a traffic stop makes the passenger just as seized as the driver.[3]See, e.g., State v. Tijerina, 61 Wash.App. 626, 628, 811 P.2d 241 (1991) (the stop of an automobile is a seizure of all its occupants);[4]State v. Stroud, 30 Wash.App. 392, 396, 634 P.2d 316 (1981) (passenger just as restrained from leaving the scene as the driver during a traffic stop);[5]Whren v. United States, 517 U.S. 806, 809-10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (temporary detention of individuals during a traffic stop even for brief periods constitutes a seizure); Maryland v. Wilson, 519 U.S. 408, 413-14, 117 S.Ct. 882, 137 *209 L.Ed.2d 41 (1997) (as a practical matter, a passenger is stopped by virtue of the stopped vehicle); Berkemer v. McCarty, 468 U.S. 420, 436, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) ("traffic stop significantly curtails the `freedom of action' of the driver and the passengers, if any, of the detained vehicle"); United States v. Hensley, 469 U.S. 221, 226, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985) (stopping a car and detaining its occupants constitutes a seizure); Delaware v. Prouse, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) (stopping an automobile and detaining its occupants constitutes a seizure).[6]
The above cases recognize that in a traffic stop, the officer exerts a significant amount of authority and control. First, the officer generally uses overhead flashing lights, sirens, or a combination of both, to exert authority. See, e.g., Stroud, 30 Wash.App. at 396, 634 P.2d 316 (flashing lights and high beam headlights significant in effectuating a seizure). Second, an officer in a traffic stop situation generally emerges from a powerful position in the squad car, approaches the vehicle, sometimes knocks on the window, and then engages the occupants in dialogue while looking down upon them. Finally, the occupants are in a confined space with limited options for departure. Based upon these objective circumstances, a reasonable passenger might not feel free to refuse an officer's request for identification and end the encounter.[7] If a passenger leaves the car and the location, the seizure ends. If the passenger stays, the seizure continues. If the reasonable passenger would not feel free to leave when asked for identification, he has effectively been seized, even if he was not seized at the time the vehicle was stopped. If the passenger were to leave the vehicle, the seizure would end, but if the officer asks the passenger to return to the car, the passenger is again seized. The key, as the dissent repeatedly emphasizes, is the actions of the officer.
Turning to the cases at bar, in Rankin the officer pulled over the vehicle with his emergency lights, approached from the passenger side, and asked for identification. The officer took the identification from Rankin, wrote down information, and stated "be right back." Report of Proceedings (RP) at 20. In Staab, the officer pulled over the vehicle with his emergency lights and siren and asked for identification in an "impolite tone." RP at 41, 47. The officers did not suspect Rankin or Staab to be involved in any criminal activity when they made requests for identification. A reasonable person in the same situation would not have felt free to refuse the officer's requests and end the encounter. Based upon a review of state and federal precedent, and the objective circumstances surrounding the traffic stops, I would hold that Rankin and Staab were seized when the officers stopped the vehicles and requested their identifications.
B. Does an Exception to the Warrant Requirement Apply to the Facts in This Case?
A Terry investigative stop is a recognized exception to the warrant requirement under article I, section 7. State v. Acrey, 148 Wash.2d 738, 746-47, 64 P.3d 594 (2003) (citing Terry, 392 U.S. at 25-26, 88 S.Ct. 1868). Courts generally apply the less exacting Terry standard to define the constitutional limits of a police encounter during a traffic stop. Ladson, 138 Wash.2d at 350, 979 P.2d 833; Berkemer, 468 U.S. at 439, 104 S.Ct. 3138.
A Terry inquiry involves (1) whether the police "`officer's action was justified at its inception'" and (2) whether "`it was reasonably related in scope to the circumstances which justified the interference in the first place.'" Ladson, 138 Wash.2d at 350, 979 *210 P.2d 833 (quoting Terry, 392 U.S. at 20, 88 S.Ct. 1868). Here, there is no question that the officers' actions were justified at their inception because both vehicles were stopped legally. However, the scope of the officers' actions with the passengers in this case was not reasonably related to the circumstances that justified interference in the first place because Rankin and Staab were not the subjects of the traffic stops. As passengers, they were merely bystanders.
Rather than applying a Terry analysis to this case, the majority applied Larson. I concur with the majority that Larson is the seminal Washington case that applies to these factual circumstances. Larson held that a stop based on a violation committed by a driver does not reasonably provide law enforcement with grounds to request identification from a passenger unless other circumstances give "independent cause to question passengers." Larson, 93 Wash.2d at 642, 611 P.2d 771. The officer must stop short of asking for identification unless some other circumstance makes such action permissibly related to the stop or necessary for other reasons. Officers must be able to engage passengers in a vehicle in conversation as well as observe all the vehicle occupants to determine if criminal activity is occurring or the passengers have weapons in their possession that could pose a risk to the officer. In addition, the circumstances of the stop can change quickly and the officer must be able to respond to those circumstances. We recognize that officers have a difficult job; nevertheless, we must remember that Washington's Constitution grants broad privacy and personal autonomy rights to individuals. Officers must have good reason to infringe those rights by asking a person who is merely a passenger in a car for identification.
Many circumstances that might be reasonably related to the original circumstances for the stop can justify an officer's request for a passenger's identification. For example, if a vehicle is stopped because a passenger or passengers are not wearing seatbelts, a request for the passenger's identification would be appropriate. Similarly, if an officer observed a passenger acting in a way that suggested involvement in criminal activity (using drugs, hiding something, or pulling out a weapon), the officer would be justified in asking for identification. If an officer felt his safety was at risk, he might need to know with whom he is interacting. However, none of these circumstances existed in this case. Neither Rankin nor Staab committed any traffic infractions. The officers in both cases testified that neither Rankin nor Stabb did anything suspicious during the stops. The officers were unaware of any criminal activity until they checked Rankin's and Staab's records after obtaining their identification. Both officers expressed no concern about their safety during the stops.
Examples of other reasons that might justify an officer's request for identification are the need to obtain witnesses to an infraction, the need to know whether the driver of the vehicle is permissibly driving with another of suitable age and authority (i.e., minors), or the need to determine if anyone in the vehicle has a valid license to remove the vehicle from the premises. None of those circumstances existed in this case.
I would, therefore, reverse the Court of Appeals because of specific factual circumstances presented in this case.
IRELAND, J. (dissenting).
In this consolidated case, petitioners James Rankin and Kevin Staab contend that their right to privacy pursuant to Washington Constitution article I, section 7 was violated when, as passengers in vehicles that had been lawfully stopped, the officers in their respective cases asked them for identification in the absence of evidence that Rankin or Staab was engaged in criminal activity. I disagree with the majority that the passengers were seized and would find that the inquiry for identification, by itself, did not infringe on Staab's or Rankin's right to privacy because, under the totality of the circumstances in each case, a reasonable person would have felt free to decline the officer's request. I therefore dissent.

FACTS
James Rankin
On the night of September 17, 1999, Deputy Geoghagan saw a black Mustang, driven *211 by Karena Gunn, roll through a stop line. Rankin was a passenger in that vehicle. Geoghagan proceeded to pull the vehicle over using the emergency lights on his marked patrol car and approached the passenger side window after the vehicle stopped in a grocery store parking lot. Geoghagan did not see Rankin commit an infraction, although Geoghagan recognized him as someone he had arrested one month prior for both possession of a stolen vehicle and possession of controlled substances. There is no indication that Rankin recognized Geoghagan as Rankin did not testify at the suppression hearing.
While Gunn was searching for her driver's license, Geoghagan asked if Rankin had any identification on him. Rankin handed his ID card to Geoghagan, who wrote down the information. There is conflicting testimony whether Geoghagan immediately returned Rankin's ID card, and the trial court did not make an explicit finding on that matter. Geoghagan estimated that about 20 seconds elapsed from the time he took Rankin's ID, wrote down the information, and then returned the card. By this time Gunn had found her license, which she also handed to Geoghagan. The majority is incorrect when it says the deputy used the cards to run a check for possible warrants. Majority at 204. Rather, Geoghagan testified that he then took Gunn's license and the information he had taken from Rankin's ID card, stating he would "be right back." Geoghagan had dispatch run a warrants check on both ID numbers, which revealed an outstanding warrant for Rankin's arrest for violation of a no contact order. Gunn's record was clear, and she was ultimately given a warning. Geoghagan estimated the warrants check took two to three minutes.
After discovering the outstanding arrest warrant, Geoghagan called for backup, and once another officer arrived, they approached the vehicle and arrested Rankin. There is uncertainty in the record whether a third patrol car arrived sometime during the stop. The search incident to arrest revealed a knife and a crystalline substance in Rankin's pocket. After giving Rankin Miranda warnings (Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)), Geoghagan asked Rankin what the crystalline substance was and how much he had on him, to which Rankin responded it was about one ounce of methamphetamine.
The trial court concluded that, under the totality of the circumstances, Rankin had been illegally seized when the vehicle was pulled over and that a reasonable person in Rankin's position would have felt they were required to provide an officer their ID. The court suppressed the discovery of the methamphetamine and dismissed the case.
Kevin Staab
The following facts are undisputed. Late on March 3, 1999, Staab was riding in a vehicle stopped for a malfunctioning license plate light. Officer Renninger was driving in a marked patrol car and stopped the vehicle using his lights and siren. Renninger asked the driver for his license, proof of insurance, and registration. In the same tone he asked Staab, "Can I see your driver's license or proof of identification?" although Renninger did not suspect Staab of criminal activity. According to Staab, Renninger did not ask for the identification in a polite tone. Renninger agreed with that characterization. Staab responded that he did not think he had any ID on him, but he nonetheless reached in his left front shirt pocket and as he pulled out an ATM card, a clear plastic bag containing a white chalky substance fell out. Staab put the bag back in his pocket and gave Renninger his name orally.
Renninger did a computer check of the driver and Staab, both of which came back clear. While Renninger was running this check, Officer Syler arrived to assist with the stop; Renninger related what he had seen in the plastic bag. Both officers returned to the vehicle and arrested Staab. The search incident to the arrest produced the bag of white chalky powder that Renninger suspected was cocaine.
The trial court found that Renninger was within his authority to ask Staab for identification and that the circumstances of this case did not suggest any coercive police conduct. It ultimately denied Staab's motion to suppress the evidence of cocaine. Staab requested *212 a stipulated facts trial and was found guilty of possession of a controlled substance.

ISSUES
May an officer request the identification of a passenger in a lawfully stopped vehicle, absent an articulable suspicion of criminal activity or other reasonable rationale for doing so, without violating the passenger's right to privacy pursuant to Washington Constitution article I, section 7?
If so, should the officer be required to inform the passenger of his or her right to refuse the request for identification?

ANALYSIS
Standard of Review
On a motion to suppress, this court reviews disputed findings of fact under a substantial evidence standard. State v. Mendez, 137 Wash.2d 208, 214, 970 P.2d 722 (1999). Evidence is substantial if it is sufficient to convince a reasonable person of the truth of the finding. Id. Where substantial evidence supports challenged facts, those facts will be binding on appeal. State v. Hill, 123 Wash.2d 641, 647, 870 P.2d 313 (1994). Unchallenged findings of fact are verities on appeal. Id. at 644, 870 P.2d 313. Whether an encounter with police is permissive or a seizure is a mixed question of law and fact. State v. Thorn, 129 Wash.2d 347, 351, 917 P.2d 108 (1996). Yet, whether the facts may be characterized as a seizure is a legal question that is reviewed de novo. Id.
Washington Constitution article I, section 7
Article I, section 7 of the Washington Constitution provides: "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." This section requires that (1) there be a privacy interest worthy of protection, and (2) the government engages in some activity that infringes on that privacy interest. See City of Seattle v. McCready, 123 Wash.2d 260, 270-71, 868 P.2d 134 (1994). The question of whether an interest is accorded privacy protection under article I, section 7 also includes "an examination of whether the expectation is one which a citizen of this state should be entitled to hold." Id. at 270, 868 P.2d 134. Subject matter that is voluntarily exposed to the public is not considered part of a person's private affairs. State v. Young, 123 Wash.2d 173, 182, 867 P.2d 593 (1994).
In the context of police-citizen interactions, this court has utilized a seizure type test to determine whether police have engaged in an activity that infringes on an individual's privacy right. See State v. Young, 135 Wash.2d 498, 957 P.2d 681 (1998). Accordingly, a person is seized, for purposes of article I, section 7, when his or her freedom of movement is restrained by means of physical force or a show of authority and when, in view of all surrounding circumstances, a reasonable person would not have felt free to leave or to refuse to answer an officer's requests and end the encounter. In Young, 135 Wash.2d at 510, 957 P.2d 681, Washington adopted the test for fourth amendment "seizure" in United States v. Mendenhall, 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), as the test for seizure analysis under Washington Constitution article I, section 7. See State v. O'Neill, 148 Wash.2d 564, 574, 62 P.3d 489 (2003); Florida v. Bostick, 501 U.S. 429, 436, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); Thorn, 129 Wash.2d at 351-52, 917 P.2d 108.
"[T]he test for disturbance of a person's private affairs under article I, section 7 is a purely objective one, looking to the actions of the law enforcement officer...." Young, 135 Wash.2d at 501, 957 P.2d 681. "[N]ot every encounter between a police officer and a citizen is an intrusion requiring an objective justification." Mendenhall, 446 U.S. at 553, 100 S.Ct. 1870. Passive officer-community interaction is a necessary component of law enforcement efforts. Young, 135 Wash.2d at 511, 957 P.2d 681. However, circumstances that may indicate a seizure has occurred, irrespective of whether the person tried to leave the scene or cease the exchange, include: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, ... the use of language or tone of voice indicating that compliance with the officer's request might be compelled" Mendenhall, 446 U.S. at 554, 100 S.Ct. 1870, or a forceful stride. Thorn, 129 Wash.2d at 353, *213 917 P.2d 108. As a matter of law, "otherwise inoffensive contact" cannot amount to a seizure absent such indications. Mendenhall, 446 U.S. at 555, 100 S.Ct. 1870. Rankin and Staab have the burden of showing their private affairs have been disturbed. See Young, 135 Wash.2d at 510, 957 P.2d 681.
Rankin and Staab insist that a seizure analysis is not dispositive in an article I, section 7 claim for protection. Touting the "unique privacy rights of innocent passengers," Rankin advocates solely a privacy analysis that balances the individual's privacy interest against the State's authority of law to infringe on that interest. Rankin and Staab argue that Geoghagan and Renninger required the surrender of their respective identification without authority of law. However, in fact neither of them surrendered their identification; at most Geoghagan looked at the identification for 20 seconds, took down the information, and handed it back. Staab did not produce any identification and responded orally with his name.
Rankin's and Staab's position is contrary to the law established by this court in Young, 135 Wash.2d 498, 957 P.2d 681, and recently affirmed in O'Neill. A consensual surrender vitiates any infringement of privacy; a required surrender elevates the encounter to a seizure. See Mendenhall, 446 U.S. at 553; Young, 135 Wash.2d at 510, 957 P.2d 681. This necessarily overlaps with seizure law, and obligates a seizure analysis under article I, section 7 in this case. The sole privacy analysis Rankin and Staab advocate is in discord with the law.
The test here is to determine, as a matter of law, that a seizure occurred and that therefore Staab's or Rankin's privacy right was violated. If, in view of all the surrounding circumstances, Rankin or Staab had a reasonable objective belief, based upon a show of authority, that he could not refuse to show identification to the officer, the test is met.
The majority agrees with both defendants and Amicus Curiae Washington Association of Criminal Defense Lawyers that State v. Larson, 93 Wash.2d 638, 642, 611 P.2d 771 (1980) stands for a categorical rule that makes it per se illegal for an officer to request or demand a passenger's identification, absent some "independent cause." Suppl. Br. of Pet'r (Staab) at 5-6; Suppl. Br. of Pet'r (Rankin) at 7-9; Br. of Amicus Curiae at 3. By the analysis of the majority, the mere seeking of identification from an innocent passenger constitutes an "investigation" of a passenger without cause. The Court of Appeals, on the other hand, concluded that Larson "merely prohibits an officer from demanding identification." State v. Rankin, 108 Wash.App. 948, 955, 33 P.3d 1090 (2001).
Larson involved a defendant who was a passenger in a vehicle that was illegally parked at 3 a.m. more than one foot from the curb on the side of a road bordering a park. The officer who approached the passenger side "asked" for the defendant's identification. Larson, 93 Wash.2d at 639-40, 611 P.2d 771. The defendant then opened her purse to retrieve her wallet to comply with the "request," whereupon the officer shined his flashlight in her purse, which revealed a bag of marijuana. Id. at 640, 611 P.2d 771. There was no indication as to the officer's tone of voice or the specific words spoken in soliciting the defendant's identification.[1] The court formed the issue as "whether it was reasonable under the circumstances for police to stop the vehicle in which petitioner was a passenger and to demand that she provide identification." Id. at 641, 611 P.2d 771 (emphasis added). The court concluded, based on the facts, that the officers did not have an articulable suspicion of criminal activity and therefore had illegally seized the defendant by demanding her identification. Id. at 645, 611 P.2d 771.
The Court of Appeals read Larson to prohibit officer demands for identification (i.e., compliance is mandatory) absent some "independent basis for doing so." Rankin, 108 Wash.App. at 955, 33 P.3d 1090. Perceiving that neither Rankin nor Staab was compelled to produce identification, the Court of Appeals reconciled this case with Larson and concluded that neither defendant's right to *214 privacy had been violated by a seizure for purposes of article I, section 7. Id. at 956, 959, 33 P.3d 1090. Based on the above analysis of Larson, the Court of Appeals took a more fact specific reading of Larson than Rankin's and Staab's bright line interpretation.
The defendants rely on the court's one-time use of the words "requested" and "asked" that the court used to describe the officer's solicitation for identification in Larson. See Larson, 93 Wash.2d at 640, 611 P.2d 771. The defendants and the majority would read Larson broadly to disallow an officer to ask anything of an innocent passenger absent some articulable suspicion of criminal activity or another reasonable rationale (such as officer safety).
However, after its initial, one-time use of "requested" and "asked," words that admittedly could be read to convey an element of permissiveness, the court discussed the issue and referenced the facts of the case exclusively using terms commonly associated with compelled activities: officers "demanding" or "requiring" Larson's identification, or "questioning" or "detaining" defendants. See id. at 641, 642, 643, 645, 611 P.2d 771. As noted above, the court even characterized the issue as one where the identification was demanded of the passenger. It appears that the court was targeting demands for identification that are not permissive, based on the court's subsequent use of terms of art indicating compelled compliance. The majority fails to acknowledge these factors.
As noted above, the first step is to determine if the officers' inquiry was a demand and, therefore, a seizure. The Larson court concluded, without an articulated analysis, that the officers' inquiry was a demand, therefore a seizure, and concluded that the seizure lacked independent justification. For this reason, Larson is not instructive here, where we must determine, in the first place, whether the officers' comments were a demand (a seizure) or permissive (no seizure). Only after drawing a conclusion that a seizure occurred do we arrive at where the Larson court began its analysis.
Moreover, even if we agreed that Larson was the test for seizure at one point, the bigger distinction to be drawn between Larson and the current case, that both the majority and concurrence misapprehend, is that the analysis in Larson is out-of-date. Mendenhall was reported only two days prior to Larson, thus the Mendenhall analysis that we use here was not realistically available to the Larson court.[2] Both defendants and the majority greatly depend on Larson, which (save a fleeting reference) had no article I, section 7 analysis and relied on the Fourth Amendment. See id. at 640, 611 P.2d 771; O'Neill, 148 Wash.2d at 580 n. 4, 62 P.3d 489. However, Young, 135 Wash.2d 498, 957 P.2d 681, first adopted the Mendenhall seizure test for use in seizure determinations in article I, section 7 cases in Washington 18 years after Larson.[3]Young, 135 Wash.2d at 509-10, 957 P.2d 681. Further, in the course of determining that Young's privacy rights were not violated when police shined a spotlight on him, utilizing the Mendenhall test for seizure, this court did not fault the officer's prior request for Young's identification as being violative of article I, section 7. Id. at 511, 100 S.Ct. 1870.
A further distinction in Larson is that the court indicated that pretext might have been involved in the stop of the vehicle. In a footnote, the court expressed its uncertainty as to the officers' motives in effectuating the stop, citing inconsistencies in the record and undisputed testimony that the "officer who demanded identification from the [defendant] treated her rudely and made comments to the effect that she was a prostitute or a streetwalker."[4]Larson, 93 Wash.2d at 642 n. 1, 611 P.2d 771. Neither Staab nor Rankin claims here that pretext was involved in their cases. In fact, the trial court expressly *215 found there was no pretext involved in Rankin's case.
Young and its progeny should govern the question of whether a seizure occurred for purposes of Washington Constitution article I, section 7. While Larson is distinguishable because the officers demanded identification, it remains good law where there is a seizure. I agree with the majority that officer demands for identification constitute seizures. However, the law requires the court to look at the totality of the circumstances under a reasonable person standard to determine whether the officer's inquiry was, in the first place, a demand or request. This is the initial question that must be answered. It is after a determination that the inquiry was a demand, and therefore a seizure, that a court must ascertain whether the officers in a given case had an articulable suspicion of criminal activity or other reasonable rationale for the seizure. According to the law established by this court, we decide the character of the inquiry for identification in this case on article I, section 7 grounds, using the Mendenhall test for seizure and the analysis set forth in Young and recently affirmed in O'Neill.
Other Jurisdictions
Rankin points to three cases from other jurisdictions that he claims support his position. First, he broadly argues that in State v. Carty, 170 N.J. 632, 635, 790 A.2d 903, modified, 174 N.J. 351, 806 A.2d 798 (2002), New Jersey's Supreme Court held that any officer contact with occupants of a vehicle is so inherently coercive that any consent given by the occupants to search the vehicle is tainted. Carty does not make such a holding. In that case, the issue was whether a request to search a vehicle that was legally stopped requires a "reasonable and articulable suspicion ... of criminal wrongdoing." Carty, 170 N.J. at 635, 790 A.2d 903. Several distinctions are apparent between Carty and the current case. The issue in Carty regarded warrantless searches of vehicles, generally, not a request for identification, as is the issue in the current case. New Jersey has a constitutional provision that specifically addresses consent searches and "requires police to have reasonable suspicion that a consent search will yield evidence of illegal activity prior to requesting such consent." Id. at 638, 790 A.2d 903. The court had multiple studies before it that documented a rampant problem of troopers coercing consent to perform roadside searches. Moreover, searches of vehicles are more invasive of privacy than simply asking for one's name.
Second, Rankin cites People v. Gonzalez, 324 Ill.App.3d 15, 257 Ill.Dec. 583, 753 N.E.2d 1209 (2001), which held that police officers may not ask for a passenger's identification without "reasonably suspecting the passenger of criminal activity." Id. at 20, 257 Ill.Dec. 583, 753 N.E.2d 1209. That court analyzed the request for identification under the Terry standard. However, as discussed above, we are compelled to adhere to Young in order to determine whether a seizure has occurred at all. The Terry analysis is misplaced.
Third, Rankin relies on State v. Johnson, 645 N.W.2d 505 (Minn.Ct.App.2002), a Minnesota Court of Appeals case where the defendant was considered seized when the officer retained defendant's ID card to do a warrant check. The court went on to conclude that the defendant had been illegally seized because the officer both retained the ID card and ran a warrants check without suspicion of criminal activity. Id. at 511. However, as we do in the current case, in determining whether a seizure occurred at all, the Minnesota court used the objective, totality of the circumstances test provided to this court in Young, 135 Wash.2d 498, 957 P.2d 681. See id. at 509-10, 957 P.2d 681. Thus, contrary to Rankin's assertions, the Minnesota court did not conclude that the defendant was seized by the initial request for ID. Moreover, the issue before this court is limited to whether the request for identification was a seizure.
In a strikingly similar case to the one at hand, Colorado's Supreme Court concluded that a request for the identification of a passenger was not a seizure, under a reasonable person standard, after consideration of all the circumstances. People v. Paynter, 955 P.2d 68, 71 (Colo.1998). The officer pulled up behind a legally parked vehicle and *216 shined his spotlight; he did not activate the siren or emergency lights. Id. at 70. Paynter was arrested for an outstanding warrant after he and the driver complied with the request for IDs, which the officer retained while he performed a check. Id. Paynter argued that the initial request for identification effectuated a seizure since the officer had "no reasonable articulable suspicion of criminal activity" and that had it not been for the request, he would not have been arrested. Id. at 71. The court found nothing about the officer's conduct that was so intimidating as to indicate that a reasonable person would not have felt free to decline the officer's request for identification. Id. at 73. Paynter is persuasive here. It is true that the officers here approached the vehicles with lights activated, while the officer in Paynter did not (he activated his spotlight). But the officers in Staab's and Rankin's cases were performing lawful stops of vehicles and the scenario in Paynter lacked even that.
Colorado has delineated three categories of police-citizen encounters: "(1) arrests, (2) investigatory stops, and (3) consensual interviews." Paynter, 955 P.2d at 72 (citations omitted). The Paynter court explained that "[d]uring a consensual interview, a police officer seeks the voluntary cooperation of an individual by asking non-coercive questions. A citizen is free to leave at any time during such an encounter or to ignore the police officer's questions." Id. (citation omitted). The test enunciated for a consensual encounter is identical to the one we are compelled to use from Young, 135 Wash.2d 498, 957 P.2d 681, for use with seizure questions under Washington Constitution article I, section 7.[5]Id. The court noted that an encounter with a police officer does not become a seizure simply because citizens may feel an inherent social compulsion to cooperate with police. Id. The court concluded that the interaction between Paynter and the officer was consensual and therefore not a seizure, "including the request and [Paynter's] response, ... because Paynter's liberty was not restrained and his `voluntary cooperation ... [was] elicited through non-coercive questioning.'" Id. at 73 (second alteration in original) (quoting People v. Johnson, 865 P.2d 836, 842 (Colo.1994)).
James Rankin
In Rankin's case, the trial court concluded that he had been seized by Deputy Geoghagan based on its factual findings that Rankin was an innocent passenger, Geoghagan recognized Rankin from an arrest the month before, there were multiple officers, and Rankin had a "limited mental sophistication." Clerk's Papers (Rankin) at 5-6. The trial court concluded, after argument on the issue, that pretext was not involved in the stop; it also found that Geoghagan had "requested" Rankin's identification. Clerk's Papers (Rankin) at 5. The Court of Appeals disagreed with the trial court's findings, to wit, that Rankin's subjective mental state was relevant, that Rankin recognized Geoghagan from the prior arrest, and that Rankin would have noticed the presence of multiple officers at the scene, all of which, the trial court concluded, contributed to Rankin's reasonable belief he was not free to leave. Rankin, 108 Wash.App. at 956-58, 33 P.3d 1090. The Court of Appeals concluded that the above findings were unsupported by the record and reversed the suppression order. Id. at 957-59, 33 P.3d 1090.
The standard is whether a reasonable person would have felt free to end the encounter, after consideration of all the circumstances. The trial court found that the prior arrest by Geoghagan was a circumstance that would have led Rankin to believe he was not free to leave. As the Court of Appeals concluded, this rationale is faulty for two reasons. First, Rankin's recognition of Geoghagan as his prior arresting officer cannot be ascertained as Rankin did not testify. Second, and most importantly, the standard has always been strictly objective, and Rankin's recognition of Geoghagan, even if definitively determined at trial, would not be relevant to the inquiry. But cf. State v. Barnes, 96 Wash.App. 217, 223, 978 P.2d 1131 (1999) (objective circumstances involved in concluding *217 defendant was seized included defendant's past experiences with the officer, but opinion unclear as to whether defendant recognized officer). The trial court's reliance on its impressions of Rankin's limited mental sophistication is similarly misplaced. Such factors do not bear on an objective analysis.
The other officer was called in by Geoghagan only after discovery of Rankin's outstanding warrant. Ostensibly, Geoghagan would have ordered Rankin to stay in the car had Rankin attempted to leave the scene before the other officer arrived as Geoghagan had probable cause to arrest Rankin at the moment the outstanding warrant was discovered. The presence of the additional officer is irrelevant to the determination of whether Geoghagan's request for Rankin's identification was a seizure and whether it thereby violated Rankin's privacy rights.
Seizure analysis under article I, section 7 focuses on the conduct of the officer, not on the subjective reaction of the individual. See Young, 135 Wash.2d at 507-08, 957 P.2d 681. Mendenhall suggests that the officer's tone of voice or the language used may be instructive in determining whether an individual is seized. Examples of permissive language include: "Gentlemen, I'd like to speak with you, could you come to my car?" (State v. Nettles, 70 Wash.App. 706, 708, 855 P.2d 699 (1993)), and, "Can I talk to you guys for a minute?" (State v. Aranguren, 42 Wash.App. 452, 455-56, 711 P.2d 1096 (1985); State v. Richardson, 64 Wash.App. 693, 695, 825 P.2d 754 (1992)). "Wait right here" was characterized as coercive and constituted a seizure. State v. Ellwood, 52 Wash.App. 70, 73, 757 P.2d 547 (1988). The record is not clear on the phraseology or tone of Geoghagan's request. However, there is testimony from the driver that he asked for Rankin's identification in the same way he asked for the driver's, while Geoghagan testified that he "asked [Rankin] if he had any identification on him." Report of Proceedings (Rankin) at 5. Rankin has not met his burden of proof that a reasonable person, hearing what Geoghagan said, would not have felt free to refuse to identify himself.
Rankin urges this court to consider Geoghagan's comment, "I'll be right back," made as he returned to his patrol car to run the names, as contributing to Rankin's reasonable belief he was not free to leave. The record does not clarify whether Geoghagan directed his comment only to Rankin, and there is no basis to assume it was anything other than a statement made to the driver. It would be just as reasonable to conclude that Geoghagan was simply telling each individual that he would not be keeping them much longer. In any case, Rankin has not met his burden merely by proffering that the statement was made.
The Court of Appeals also disagreed with the distinction the trial court drew between officers approaching pedestrians and officers approaching innocent passengers in vehicles, based on the fact that a passenger's mode of transportation is made unavailable when the vehicle is stopped, whereas a pedestrian is free to continue on his or her way as before. Rankin, 108 Wash.App. at 956-58, 33 P.3d 1090. I agree. The trial court perceived, and Rankin maintains, that this distinction would contribute to a passenger's reasonable belief that he is not free to leave. However, "the focus of the inquiry is not on whether the defendant's movements are confined due to circumstances independent of police action, but on whether the police conduct was coercive." Thorn, 129 Wash.2d at 353, 917 P.2d 108. Moreover, there is no precedent for drawing a distinction between passengers and pedestrians when undertaking a seizure analysis. As the Court of Appeals did, we should refuse to distinguish between police-pedestrian encounters and police-passenger encounters based on the differences in modes of transportation.
When the facts are distilled, the only ground upon which Rankin claims that he had a reasonable belief he was not free to leave is simply that Geoghagan requested Rankin's identification. Rankin has failed to show that the request was made in such a waythrough tone of voice, language used, or any other circumstancesas to show Rankin could have reasonably believed he was not free to leave. Of note, Rankin has not assigned error to the trial court's finding that Geoghagan "requested" the identification, thus it is a verity on appeal. The surrounding *218 circumstances cited by the trial court (presence of multiple officers, recognizing the arresting officer, and "limited mental sophistication") were irrelevant considerations in an objective standard and, in any event, were not supported by the record. Thus, in viewing all the circumstances, Rankin voluntarily disclosed his identity to Geoghaganinformation Rankin now asserts should be protected. Washington's privacy law does not extend article I, section 7 protection to information voluntarily given. In Rankin's case, we hold that his privacy was not infringed by Deputy Geoghagan's mere request for identification because his compliance was not coerced or compelled, in view of all the circumstances. Rather, while Rankin was free to refuse, instead, he voluntarily provided identification. I would affirm the Court of Appeals' reversal of the trial court's suppression of the evidence.
Kevin Staab
The Court of Appeals did not disturb the trial court's factual findings or legal conclusions on appeal and upheld the denial to suppress the discovery of the cocaine. In particular, the Court of Appeals concluded in Staab's case that the trial court's "factual finding" that Officer Renninger had not coerced Staab into producing identification was supported by the record.[6]Rankin, 108 Wash.App. at 956, 33 P.3d 1090.
In addition to arguments like those already discussed above, Staab challenges the Court of Appeals' reliance upon three cases involving police-pedestrian or passenger encounters: Mendez, 137 Wash.2d 208, 970 P.2d 722; Young, 135 Wash.2d 498, 957 P.2d 681; and State v. Armenta, 134 Wash.2d 1, 948 P.2d 1280 (1997). Staab urges this court to distinguish the pedestrian and passenger scenarios based on the difference between the modes of transportation. He disagrees with the Court of Appeals' use of Mendez to support its conclusion that a passenger is in the same position as a pedestrian because the passenger's privacy rights are undiminished by the stop. See Rankin, 108 Wash.App. at 954-55, 33 P.3d 1090. Maintaining the analogy to police-pedestrian encounters, the Court of Appeals noted that, as with a pedestrian, "a mere request for identification from a passenger does not rise to the level of a seizure." Id.
In Mendez, this court considered the validity of an officer's order to a passenger that he remain inside a vehicle. The defendant was a passenger in a vehicle that was legally stopped. Mendez, 137 Wash.2d at 212, 970 P.2d 722. As soon as the vehicle came to a stop, Mendez and the driver exited the car and began walking away, at which point one of the officers ordered Mendez to get back in the vehicle. Id. Repeatedly fumbling with his clothes, Mendez instead continued to walk away, then broke into a run after an additional command to return to the vehicle. Id. at 213, 970 P.2d 722. A foot chase ensued, ending with Mendez's arrest; the search incident to arrest produced a marijuana pipe. Id. Resolving the case on article I, section 7 grounds, this court concluded that an officer must be able to "articulate an objective rationale predicated specifically on safety concerns" to demand a passenger to stay in a vehicle or exit a vehicle. Id. at 220, 970 P.2d 722. The officer's objective rationale need not meet the Terry stop standard of an articulable suspicion of criminal activity. Id.; see Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Relevant, but nonexclusive factors in this objective standard include: "the number of officers, the number of vehicle occupants, the behavior of the occupants, the time of day, the location of the stop, traffic at the scene, affected citizens, or officer knowledge of the occupants." Mendez, 137 Wash.2d at 221, 970 P.2d 722. This court concluded that Mendez was illegally seized because the officers were unable to *219 meet the objective rationale standard. Id. at 224, 970 P.2d 722.
In Armenta, which was decided on Fourth Amendment grounds, the defendants initiated contact with the officer when their car broke down; they accepted the officer's offer to assist them. Armenta, 134 Wash.2d at 4-5, 948 P.2d 1280. The officer asked both defendants for identification so he could alert dispatch as to where he was as a safety precaution. Id. at 5, 948 P.2d 1280. There was no seizure when the officer asked for identification because an officer's questioning regarding an individual's identity or a request for identification, without more, is unlikely to result in a seizure. Id. at 11, 948 P.2d 1280. The court concluded that the officer's request for identification would not have indicated to a reasonable person that he was not free to leave or end the encounter. Id. at 11-12, 948 P.2d 1280.
Recall that in Young, 135 Wash.2d 498, 957 P.2d 681 this court held the defendant was not seized, under article I, section 7, when police shined a spotlight on him because the illumination "did not amount to such a show of authority a reasonable person would have believed he or she was not free to leave ... until some positive command from [the officer] issued." Young, 135 Wash.2d at 513-14, 957 P.2d 681.
Staab distinguishes Mendez, Armenta, and Young based on his perceived legal distinction between passengers and pedestrians. Staab further distinguishes Armenta based on the fact that the defendants there initiated the contact with the officer and distinguishes Young based on the court's conclusion that the light revealed nothing that was not already in plain view. As previously discussed, there is no precedent for the distinction Staab and Rankin attempt to draw between pedestrians and passengers, and neither defendant offers a good reason to do so. The focus of the analysis is on the conduct of the officer, not on the individual's status as pedestrian or passenger. The Court of Appeals recognized the factual distinctions between Staab's and Rankin's cases and the facts in Mendez, Armenta, and Young, but these distinctions do not vitiate their precedential value in the court's seizure analysis.
Staab also contends that the Court of Appeals' reading of Larsonthat there must be a demand for identification before a seizure can be foundadds new elements to the Larson analysis. Staab perceives these new elements to be the factors the Court of Appeals identified as being relevant in determining whether a demand was made: the officer's tone of voice or language, the officer's position at the vehicle, and whether there has been a show of force. See Rankin, 108 Wash.App. at 955, 33 P.3d 1090. Staab notes that the Court of Appeals cited no authority for these elements and consequently labels them as "new." While the Court of Appeals did not cite to authority for those factors, it seems clear that they are consistent with the factors adopted in Mendenhall (Fourth Amendment) and Mendez (Washington Constitution article I, section 7). The Court of Appeals' decision correctly finds that the trial court's conclusion that Officer Renninger did not coerce Staab into giving his name is supported by substantial evidence in the record.
A central reason why an officer might want to know the names of the occupants in a vehicle is to have a list of witnesses if a court proceeding ensued on the traffic stop or perhaps even a criminal trial or investigation depending on the circumstances of the stop.
Concurrence
I disagree with the concurrence by Justice Fairhurst that "an officer's detaining of a passenger during a traffic stop makes the passenger just as seized as the driver." Concurrence at 208. We held to the contrary in Mendez, 137 Wash.2d at 222-23, 970 P.2d 722. It was not stopping the vehicle, rather the action of the officer in requiring Mendez to return to the vehicle which constituted the seizure. In Mendez the trial court held, "`The traffic stop of the Mendez vehicle constituted a seizure of the vehicle and all of its passengers.'" Id. at 221, 970 P.2d 722 (quoting conclusion of law). We said, "the trial court's conclusion Mendez was seized by the traffic stop is clearly wrong." Id. at 222, 970 P.2d 722. The concurrence also cites *220 State v. Tijerina, 61 Wash.App. 626, 628-29, 811 P.2d 241 (1991), which says, "[t]he stop of an automobile is a seizure of its occupants and must therefore be reasonable," citing as authority State v. Kennedy, 107 Wash.2d 1, 4, 726 P.2d 445 (1986). The authority cited is inapposite. What it actually says is, "Both the State and Kennedy agree that a stop, although less intrusive than an arrest, is nevertheless a seizure and therefore must be reasonable...." Id. at 4, 726 P.2d 445. Nothing is said about the occupant other than the driver, Kennedy, who was charged with possession of marijuana. This court affirmed his conviction. Thus, the principle articulated in Tijerina is not supported by the authority cited. Furthermore, because Tijerina is a Court of Appeals case decided prior to our decision in Mendez, it has no precedential value. The final state case cited, State v. Stroud, 30 Wash.App. 392, 634 P.2d 316 (1981), is distinguishable because it was the manner of the stop, with a show of authority, which resulted in a seizure of the passenger, Stroud. "Under the totality of the circumstances, the officers' attempt to summon the occupants of the parked car with both their emergency light and high beam headlights constituted a show of authority sufficient to convey to any reasonable person that voluntary departure from the scene was not a realistic alternative." Id. at 396, 634 P.2d 316. Under Washington law, merely stopping a vehicle for a traffic infraction, without more, does not result in a seizure of the passenger.
The federal cases cited by the concurrence do state that the stopping of an automobile and detaining its occupants constitutes a "seizure" under the Fourth and Fourteenth Amendments and must therefore be made under a standard of "reasonableness." Delaware v. Prouse, 440 U.S. 648, 653-54, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) (automobile stops for random checking of driver license and registration in the absence of any articulable facts to justify the stop are arbitrary and unreasonable). In Berkemer v. McCarty, the court held that a traffic stop "significantly curtails the `freedom of action' of the driver and passengers...." 468 U.S. 420, 436, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). However, even though acknowledging the traffic stop constitutes a seizure, the court found that it did not amount to being in custody so as to require the giving of Miranda warnings. The court analogized the traffic stop to a "Terry stop" rather than a formal arrest. Id. at 439, 104 S.Ct. 3138.
If the federal precedent cited requires this court to hold that the passengers, Rankin and Staab, were "seized" merely because the driver was stopped for a traffic infraction, then whether identification was requested or demanded would not matter, as they would already be seized. The determination would then be, is it reasonable to request identification from a person seized in the traffic stop. For all the reasons noted in the concurrence, I would answer that question yes. As in a "Terry stop," the request for identification is a minimal intrusion and is permissible.
Requirement to Inform Passengers of Right to Refuse
Staab requests that we should require officers to alert innocent passengers of their right to refuse the officer's request for identification. He notes that we have already done so in the context of police requests to enter an individual's home to commence a search of the premises. (See State v. Ferrier, 136 Wash.2d 103, 115, 960 P.2d 927 (1998)). Ferrier laid out a bright line rule for police conduct during a "knock-and-talk" warrantless search. Moreover, the court emphasized that "`the home receives heightened constitutional protection.'" Ferrier, 136 Wash.2d at 118, 960 P.2d 927 (quoting Young, 123 Wash.2d at 185, 867 P.2d 593). This court has guarded against extension of the Ferrier rule, even in situations involving searches of homes. See State v. Thang, 145 Wash.2d 630, 636-37, 41 P.3d 1159 (2002) (holding that defendant's reliance on Ferrier was misplaced since police did not engage in a knock and talk procedure); State v. Williams, 142 Wash.2d 17, 19, 11 P.3d 714 (2000) (reliance on Ferrier inappropriate in case challenging search of apartment that commenced without police first informing of a right to refuse because police conduct did not constitute a knock and talk procedure). As stated in Paynter, *221 a consensual encounter does not become an investigatory stop because the police do not inform the individual that he or she is free to leave. "While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response."
Paynter, 955 P.2d at 72 (quoting INS v. Delgado, 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984)). It would be inappropriate to extend Ferrier to the current case, requiring officers to inform passengers of their right to refuse a request for identification, when this court has refused to do so in cases far closer in kind to the context addressed in Ferrier.

CONCLUSION
Pursuant to article I, section 7, an individual is free from government intrusion into his private affairs absent authority of law. I would hold: (1) without an independent reason for doing so, an officer may not require a passenger to produce his or her identification (see Larson, 93 Wash.2d at 642, 611 P.2d 771); (2) an officer's mere request for identification from a passenger is not an infringement of privacy; and (3) a request for identification may be found to be coerced or compelled where there is a show of authority or circumstances presented that would lead a reasonable person to feel compelled to give their identification under the totality of the circumstances. In the instant case, neither petitioner's privacy right was infringed upon by the officer's mere request in their respective cases.
This court has refused to extend Ferrier to other circumstances involving searches of homes that did not involve and knock and talk. Such a guarded jurisprudence suggests it would be inappropriate to extend Ferrier to require officers to inform vehicle passengers of their right to refuse a request for identification. I would affirm the Court of Appeals and therefore dissent.
BRIDGE and MADSEN, JJ., concur.
NOTES
[1] Even the dissenters in Larson read the majority opinion as prohibiting officers from requesting identification without an independent reason. Larson, 93 Wash.2d at 654, 611 P.2d 771 (Horowitz, J., dissenting). The dissenters stated: "Petitioner contends that even if the officers had sufficient grounds to stop the car and ask the driver for his identification, they had no grounds to ask [the defendant-passenger] for her identification. The majority agrees with this contention. I cannot." Id. (emphasis added).
[2] "Detention" is defined as "[t]he act or fact of holding a person in custody; confinement or compulsory delay." BLACK'S LAW DICTIONARY 459 (7th ed.1999).
[3] Dissent at 214.
[4] As we indicated, Larson was decided under the fourth amendment to the United States Constitution as well as the state constitution. Larson, 93 Wash.2d at 645, 611 P.2d 771. Because article I, section 7 resolves this case, we need not apply the Fourth Amendment.
[5] Under the particular facts before us, the requests for identification were not reasonably related to officer safety. If there were issues of officer safety, the result might have been different. See State v. Hudson, 124 Wash.2d 107, 112, 874 P.2d 160 (1994).
[1] "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." WASH. CONST. art. I, § 7.
[2] O'Neill involved a person who was sitting in the driver's seat of a legally parked car when he was approached by an officer and asked for identification. Although I apply the rule articulated in O'Neill to the situation in this case, the outcome is necessarily quite different because the facts are substantially different. The different outcome in this case does not overrule O'Neill or limit its application in circumstances more comparable to the facts in that case.
[3] This court has held that a passenger is not seized by virtue of the vehicle stop alone. State v. Mendez, 137 Wash.2d 208, 222-23, 970 P.2d 722 (1999) (holding that the passenger was not seized when the vehicle was stopped; he was seized when the officer demanded that he return to the vehicle after trying to walk away). That ruling is not fatal to this analysis, however. While a passenger may not be seized precisely at the moment the vehicle is stopped, once the officer takes further action (i.e., demanding that the passenger stay in or return to the car, asking for identification), the passenger is no longer free to leave. Thus, this case is entirely consistent with Mendez. The request for identification, like the demand to return to the vehicle, triggers the analysis of whether the passenger is truly free to leave or decline the request.
[4] The dissent is correct that Tijerina has no precedential value for this court; however, it was not offered for that purpose. As noted above, Mendez, the case the dissent claims superseded Tijerina, is not fatal to my analysis because it held only that a passenger was not seized at the moment the car was stopped. I agree that the seizure does not occur when the car is stopped but when the officer takes additional action with respect to the passenger.
[5] The dissent claims that Stroud is distinguishable because the officer made a show of authority that resulted in the seizure. Here, the show of authority began with the accoutrements of the stop but reached its zenith when the officers asked the passengers, who had committed no infraction, for identification. As the dissent states, "[u]nder Washington law, merely stopping a vehicle for a traffic infraction, without more, does not result in a seizure of the passenger." Dissent at 220. I agree; the seizure occurred when the officers took the very next step.
[6] In acknowledging the relevance of the remaining cases cited, the dissent claims that the analysis relates more to the analysis in Terry. As noted above, I agree that the proper analytical framework for this issue is Terry. I merely disagree with the dissent's conclusion.
[7] I am aware of the cases that indicate that the officer's actions in pulling over the vehicle are directed toward the driver and not the passenger. See, e.g., People v. O'Neal, 32 P.3d 533, 538 (Colo.Ct.App.2000). I believe a passenger, relying on the driver for transportation, observes the same authoritative manifestations as the driver and may feel similarly compelled to comply with the officer's request under the officer's show of authority as the driver of the vehicle.
[1] However, as is discussed more fully below, the record reflected that the officers spoke to her rudely and insinuated she was a prostitute and a "street walker."
[2] Mendenhall was decided May 27, 1980; Larson was decided May 29, 1980.
[3] Interestingly, both defendants' briefs ignore this portion of the Young analysis and the interplay it established between article I, section 7 and seizure law.
[4] The majority appears to ignore these surrounding circumstances when it says "the decision must be read in light of the facts of the case, which were that the officer merely `asked' the passenger for the identification." Majority at 205-06.
[5] So, while Paynter was decided on Fourth Amendment grounds, its analysis is still instructive.
[6] The Court of Appeals characterized this as a factual finding, despite its placement in the trial court's conclusions of law. This treatment appears to be deliberate given a footnote in the opinion stating, "[a]lthough these findings were listed as conclusions of law, it is clear that the trial court was actually making a factual determination, and we treat them as such." Rankin, 108 Wash.App. at 956 n. 16, 33 P.3d 1090. In any event, while the officer's words and conduct would be factual findings, the trial court's conclusion that they did not amount to coercive conduct (i.e., a seizure) would be a legal conclusion, which is reviewed de novo.