[No. 58418-9-I. Division One. March 12, 2007.]

ROBERT BUTLER, *Appellant*, v. THE HONORABLE E. KATO, *as King County District Court Judge*, ET AL., *Respondents*.

*Christine A. Jackson* (of *The Public Defender*), for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Deanna Jennings Fuller, Deputy,* for respondent.

*Sheryl Gordon McCloud* ) on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae.

¶1 BAKER, J. — Robert Butler was charged with DUI (driving under the influence) after allegedly causing an automobile accident. The district court released him on his own recognizance on condition he undergo an alcohol evaluation, comply with any recommended treatment, and attend three self-help meetings each week, providing the court with proof of compliance with those conditions. The superior court denied his writ of habeas corpus challenging the conditions, and Butler sought review by this court. We hold the conditions imposed on Butler's pretrial release are not authorized by court rule and violate the United States and Washington Constitutions.

## I

¶2 Robert Butler rear-ended a stopped King County Sheriff's vehicle. Both vehicles sustained significant damage. Officers at the scene described Butler as having blood-shot eyes and smelling of alcohol, and noted that he was slurring his words. The sheriff's deputy was uninjured but was taken to the hospital for observation. Butler complained of chest pain and difficulty breathing, and was taken to the hospital. A blood test taken at the hospital showed Butler to have a blood alcohol reading of 0.20, well above the legal limit.

¶3 Butler was charged with DUI (RCW 46.61.502). The district court released Butler on his own recognizance but imposed a number of conditions. The conditions, checked off a preprinted form, ordered that Butler:

1. Not drive without a valid license and insurance.

2. Not consume/use alcohol, controlled substances, or nonprescribed medications.

3. Attend at least 3 self-help groups (e.g., Alcoholics Anonymous (AA)/Narcotics Anonymous (NA)) per week. (Provide proof to the court at each hearing.)

4. Within 30 days be evaluated at a state-approved alcohol treatment agency and immediately enroll in and comply with any recommended treatment program. (Provide proof to the court at each hearing.)

¶4 Butler challenged conditions 3 and 4 by writ of habeas corpus, asserting that they are not authorized by Criminal Rule for Courts of Limited Jurisdiction (CrRLJ) 3.2 and are constitutionally prohibited. The superior court denied the writ but entered an order to protect Butler's right to remain silent and to prevent the prosecution from using any statements Butler might make during the evaluation. We granted review.

## II

¶5 The writ of habeas corpus is an original action. The petitioner does not seek review of another court's

decision but, rather, sets forth allegations detailing the unlawfulness of detention.[1] Appellate courts review writ actions of the superior court de novo.[2] The application of a court rule to particular facts is a question of law reviewable de novo.[3]

¶6 Butler argues that the compelled alcohol evaluation and treatment and attendance at self-help group meetings imposed as conditions of his release are not authorized under CrRLJ 3.2.

■■ ¶7 Criminal Rule (CrR) 3.2 and CrRLJ 3.2 govern conditions of pretrial release. Under these rules, release from pretrial detention on personal recognizance is presumed. "Any person, other than a person charged with a capital offense, shall at the preliminary appearance or reappearance pursuant to rule 3.2.1 be ordered released on the accused's personal recognizance pending trial."[4] The presumption of release may be overcome if the court determines that such recognizance will not reasonably assure the accused's appearance when required or when there is shown a likely danger that the accused will commit a violent crime.[5]

¶8 "If the court determines that the accused is not likely to appear if released on personal recognizance, the court shall impose the *least restrictive* . . . conditions that will reasonably assure that the accused will be present for later hearings."[6] Those conditions include placing the accused in the custody of a designated person or organization agreeing to supervise the accused, restrictions on travel or association, requiring a bond, requiring the accused to return to

---

[1] RCW 7.36.030.

[2] *In re Pers. Restraint of Becker*, 96 Wn. App. 902, 905, 982 P.2d 639 (1999), *aff'd*, 143 Wn.2d 491, 20 P.3d 409 (2001).

[3] *State v. Carlyle*, 84 Wn. App. 33, 35, 925 P.2d 635 (1996).

[4] CrRLJ 3.2(a).

[5] CrRLJ 3.2(a)(1), (2).

[6] CrRLJ 3.2(b) (emphasis added).

custody during specified hours, or electronic monitoring.[7] The rule also authorizes the court to impose any condition other than detention deemed reasonably necessary to assure appearance as required.[8]

¶9 In determining which conditions of release will reasonably assure the accused's appearance, the court shall consider the relevant facts, including the accused's history of response to legal process, the length of the accused's residence in the community, the accused's criminal record, and the nature of the charge.[9]

■ ¶10 There is no information in the record indicating that Butler would not appear in court when necessary. In fact, he appeared for both his arraignment and the writ hearing. He also arranged to have counsel appointed for him. Neither the district nor the superior court cited to any criminal history, a history of nonappearance, or disregard for court orders. Indeed, the superior court noted that Butler had no history. CrRLJ 3.2 states that the court "shall impose the least restrictive" conditions that will reasonably assure the accused will appear in court.[10] The rule also requires the court, in making its determination, to consider "available information."[11] There was no information before the court sufficient to rebut the presumption of release.

■ ¶11 The district court appears to have based its decision to impose the challenged conditions on Butler's DUI charge and the police reports. But the nature of the charge is only a factor to be considered "if relevant to the risk of nonappearance."[12] Certain crimes are logically related to the likelihood that the accused will not return to court as promised. Bail jumping, escape, perjury, and intimidating a judge all have a nexus intimating a disrespect

---

[7] CrRLJ 3.2(b).

[8] CrRLJ 3.2(b)(7).

[9] CrRLJ 3.2(c).

[10] CrRLJ 3.2(b).

[11] CrRLJ 3.2(b).

[12] CrRLJ 3.2(c)(8).

for the judicial process "relevant to the risk of nonappearance." Such a risk of nonappearance is not logically apparent in a charge of DUI.

¶12 Given the paucity in the record of any indication that Butler would fail to appear in court, imposing mandatory alcohol evaluation and treatment and thrice weekly AA meetings does not comport with the rule's requirement that the court "shall impose the least restrictive" conditions that will reasonably assure that he do so. The State failed to rebut the presumption of release with a showing that personal recognizance was not sufficient to ensure Butler's future appearance. We therefore reject the argument that the challenged conditions imposed on Butler's release are justified to ensure his presence at future court proceedings.

¶13 The court may also impose restrictions and conditions on the accused's pretrial release if it is shown that there is a substantial danger that the accused will commit a violent crime.[13]

¶14 The State contends that the default presumption in favor of release does not apply to anyone charged with DUI. Butler argues that DUI, in and of itself, does not constitute a violent crime. The issue is complicated by the fact that the rule does not define what constitutes a violent crime. It tells us that the definition is not limited to crimes defined as "violent offenses" in RCW 9.94A.030 but may also include misdemeanors and gross misdemeanors.[14]

¶15 We need not attempt a definition of "violent crime." The trial court made a factual determination that there was substantial danger Butler would engage in a violent crime. Given probable cause, the court could impose conditions to address its legitimate concerns for public safety. CrR 3.2 provides a number of conditions the court may impose to ensure public safety, including prohibiting the accused from committing any violations of criminal law, possessing or consuming intoxicating liquors, requiring the posting of a

[13] CrRLJ 3.2(a)(2), (e).

[14] CrRLJ 3.2(a).

bond, and imposing travel restrictions or electronic monitoring.[15] The rule also allows the court to impose any condition other than detention to assure noninterference with the administration of justice and reduce danger to others or the community.[16]

¶16 But CrRLJ 3.2(d)(10) is not without limits. The court may not impose onerous or unconstitutional provisions where lesser conditions are available to ensure the public is protected against potential violent acts. To do so is an abuse of judicial discretion.

¶17 Butler asserts that, in addition to not being supported by CrRLJ 3.2, the challenged conditions imposed on his pretrial release violate his right against self-incrimination, his right of confidentiality and autonomous decision making, his right to counsel, and the doctrine of unconstitutional conditions.

¶18 It appears that the district court, rather than imposing conditions appropriate for pretrial release, imposed what amounts to postconviction penalties such as might be imposed on a probationer. The court checked off the conditions of Butler's release on a preprinted form. In the upper right-hand corner is the phrase "Additional Conditions of Release Pending," followed by three check boxes labeled "Trial, Sentencing, and Pretrial." All three boxes were checked. Below that, nine conditions of release are listed, ranging from prohibitions on driving without a valid license and the consumption of alcohol to mandatory participation in an alcohol/drug evaluation program. Thus, postconviction conditions are listed along with conditions appropriate for pretrial release, without any distinction between them. This manner of listing invites conflation by the trial court of pretrial release conditions with postconviction release conditions.

¶19 Mandatory alcohol evaluation and treatment is precisely such a postconviction condition. RCW

---

[15] CrR 3.2; CrRLJ 3.2(d).

[16] CrRLJ 3.2(d)(10).

46.61.5055 lays out the penalty schedule for those convicted of DUI. An offender punishable under this section is subject to the provisions of RCW 46.61.5056,[17] which provides the evaluation and treatment requirements for alcohol violators. A person subject to alcohol assessment and treatment shall be required by the court to complete intensive treatment in a program approved by the Department of Social and Health Services.[18] Both statutes apply to those convicted of alcohol violations. Neither provides for treatment or release conditions for pretrial accused.

¶20 The State minimizes the implications of mandatory evaluation and treatment (and the thrice weekly AA meetings) for Butler's rights. But imposing affirmative requirements, as the court has on Butler, could involve serious restrictions on his constitutional rights.

¶21 The state and federal constitutions guarantee that no person shall be compelled in any criminal case to be a witness against himself.[19] WAC 388-805-310 lays out the requirements for chemical dependency assessments. The assessment must include: a history of the client's involvement with alcohol, including the amount, frequency, and duration of use; a history of alcohol treatment; the client's self-assessment of use of alcohol; and a legal history.[20] Additionally, it requires submission of all reports to the court and referral of a client requiring assessment for involuntary chemical dependency treatment.[21] WAC 388-805-315 requires the chemical dependency professional to report a noncompliant patient to the committing authority.[22]

---

[17] RCW 46.61.5055(6).

[18] RCW 46.61.5056(1).

[19] U.S. CONST. amend. V; WASH. CONST. art. I, § 9. The protections afforded by the state and federal constitution are the same. *In re Pers. Restraint of Ecklund*, 139 Wn.2d 166, 172 n.6, 985 P.2d 342 (1999).

[20] WAC 388-805-310(1).

[21] WAC 388-805-310(5), (6).

[22] WAC 388-805-315(4)(b).

¶22 The district court warned Butler twice that he would be remanded into custody if he failed to comply with the conditions of his release. The risk of incarceration is sufficient compulsion to implicate the Fifth Amendment.[23] The requirement of full and frank disclosure necessary in a successful alcohol evaluation obviously implicates an accused's constitutional right not to incriminate himself.

¶23 The State asserts that Butler could avoid incriminating himself either by taking his attorney with him to the sessions or declining to answer questions pertaining to his case. Those assertions are without merit. Taking an attorney to treatment sessions (and to AA meetings) would be burdensome, expensive, and contrary to accepted counseling practice. In fact, Butler did attend his evaluation and agreed to answer questions except those relating to his criminal case. Unsurprisingly, the evaluator terminated the interview and wrote to the court complaining that Butler was uncooperative and could not be evaluated.

¶24 In *United States v. Antelope*,[24] a probationer's terms of release included participating in a sexual abuse recovery program. When he refused to discuss his past sexual history, he was incarcerated. Addressing the Hobson's choice the probationer faced in revealing his history to a counselor, the court wrote: "The treatment condition placed [the defendant] at a crossroads—comply and incriminate himself or invoke his right against self-incrimination and be sent to prison. We therefore conclude that Antelope's successful participation in [treatment] triggered a real danger of self-incrimination, not simply a remote or speculative threat."[25] In pondering the implications of statements made in the course of enforced treatment, the court noted, "We have no doubt that any admissions of past

---

[23] *United States v. Antelope*, 395 F.3d 1128, 1134 (9th Cir. 2005).

[24] 395 F.3d 1128 (9th Cir. 2005).

[25] *Antelope*, 395 F.3d at 1135.

crimes would likely make their way into the hands of prosecutors."[26]

¶25 If compulsory treatment, with its attendant disclosures and revelations, can implicate a probationer's right not to incriminate himself, as was the case in *Antelope*, surely the position of an accused released prior to trial is at least equivalently compromised.

¶26 Similarly, compulsory alcohol evaluation and treatment violate one's right of confidentiality and autonomous decision making. Our Supreme Court has identified two types of interests protected by the right to privacy: the right to autonomous decision making and the right to nondisclosure of intimate personal information, or confidentiality.[27] "The interest in autonomy is recognized as a fundamental right and is thus accorded the utmost constitutional protection. . . . Government action which infringes on this right is given strict scrutiny and the State must identify a compelling governmental interest for such action to be justified."[28] The interest in autonomy includes the right to refuse medical treatment.[29]

¶27 RCW 70.96A.120 authorizes compulsory alcohol treatment of someone who presents an immediate danger to himself or others, or is gravely disabled or incapacitated by alcohol or drugs.[30] However, by its own terms, the statute exempts from the category of persons who may be detained "a person who may be apprehended for possible violation of laws relating to driving . . . while under the influence of intoxicating liquor."[31] Involuntary treatment may be sought under RCW 70.96A.140, which provides a

---

[26] *Antelope*, 395 F.3d at 1135.

[27] *O'Hartigan v. Dep't of Pers.*, 118 Wn.2d 111, 117, 821 P.2d 44 (1991).

[28] *O'Hartigan*, 118 Wn.2d at 117.

[29] *In re Welfare of Colyer*, 99 Wn.2d 114, 119-20, 660 P.2d 738 (1983).

[30] RCW 70.96A.120(2). A person found incapacitated under this provision may not be detained for more than 72 hours. RCW 70.96A.120(4).

[31] RCW 70.96A.120(2); *Alexander v. County of Walla Walla*, 84 Wn. App. 687, 694, 929 P.2d 1182 (1997).

host of procedural protections for those compelled into treatment for alcoholism. Due process requires the State to prove the basis for any involuntary commitment, whether as inpatient or outpatient.[32]

¶28 Washington's due process clause, article I, section 7, guarantees that "[n]o person will be disturbed in his private affairs . . . without authority of law."[33] Generally, due process requires the State to prove the basis for involuntary treatment by clear and convincing evidence.[34]

> We have "repeatedly . . . recognized that due process guaranties must accompany involuntary commitment for mental disorders." To determine whether commitment procedures satisfy due process requirements, this court has applied the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), which requires a weighing of three factors:
>
>> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[35]

¶29 The district court imposed release conditions after a cursory review of Butler's arrest record and accompanying police reports. Drunken driving is certainly a matter of grave concern, but the State has shown no compelling governmental interest served in imposing pretrial treatment as a condition of Butler's release. It baldly asserts

---

[32] *In re Det. of Petersen*, 145 Wn.2d 789, 795-96, 42 P.3d 952 (2002); *In re Harris*, 98 Wn.2d 276, 279, 654 P.2d 109 (1982); *In re Det. of Chorney*, 64 Wn. App. 469, 477, 825 P.2d 330 (1992) (since involuntary commitment is a significant deprivation of liberty, the State cannot accomplish it without due process of law).

[33] WASH. CONST. art. I, § 7.

[34] *Born v. Thompson*, 154 Wn.2d 749, 754-62, 117 P.3d 1098 (2005).

[35] *Born v. Thompson*, 154 Wn.2d 749, 778, 117 P.3d 1098 (2005) (alteration in original) (quoting *Dunner v. McLaughlin*, 100 Wn.2d 832, 838, 676 P.2d 444 (1984); *Mathews*, 424 U.S. at 335).

that evaluation and treatment are necessary to ensure Butler's appearance in court. It also asserts that the conditions are necessary to ensure that Butler does not arrive at court in a state of intoxication. The State also points to Butler's high blood alcohol level as justification for imposing severely restrictive pretrial conditions on his release. But there is nothing in Butler's record, other than the facts surrounding his arrest, to support the State's assertions. The State's arguments do not outweigh the risk of erroneous deprivation of Butler's constitutional rights.

¶30 The State cites a number of cases upholding the imposition of pretrial drug testing as support for imposing mandatory treatment as a condition for Butler's release. The comparison with the present case is inapt. Requiring an accused to undergo alcohol evaluation and treatment, and to attend three AA meetings a week is a far greater imposition on personal autonomy than submitting to occasional drug testing. It requires an affirmative undertaking on Butler's part and represents an undue restraint on his liberty, imposed without sufficient due process.

¶31 Unlike the right to autonomy, the right to confidentiality is not a fundamental right and is subject to rational basis analysis. "[D]isclosure of intimate information to governmental agencies is permissible if it is carefully tailored to meet a valid governmental interest, and provided the disclosure is no greater than is reasonably necessary."[36] The State has not shown that the conditions imposed on Butler were carefully tailored. Indeed, the fact that they were merely checked off a preprinted form and imposed with minimal debate or investigation argues to the contrary. The superior court did recognize that a protective order was necessary to prevent Butler's statements given during evaluation and treatment from being used against him. But the court's order does not protect Butler from having to disclose personal information to an alcohol evaluator in the first place, nor does it prevent the court from requiring him to involuntarily participate in treatment.

[36] *O'Hartigan*, 118 Wn.2d at 117.

¶32 Butler points to *United States v. Scott*[37] to support his argument that the conditions imposed on his release are prohibited by the doctrine of unconstitutional conditions. This doctrine holds that the government may not grant a benefit on the condition that the beneficiary surrender a constitutional right, even if the government may withhold that benefit altogether.[38]

¶33 In *Scott*, the accused was charged with drug possession and released on condition that he consent to random drug testing and searches of his home.[39] The Court of Appeals held that the trial court violated the unconstitutional conditions doctrine because an accused cannot be required to surrender constitutional protections as a condition of release.

> The right to keep someone in jail does not in any way imply the right to release that person subject to unconstitutional conditions . . . . Once a state decides to release a criminal defendant pending trial, the state may impose only such conditions as are constitutional.[40]

¶34 The *Scott* case turned on the constitutionality of the home searches to which the accused was subject. The State asserts that the present case can be distinguished from *Scott*, arguing that the *Scott* court's focus on the invasion of Scott's home has no equivalent here. This is too narrow a reading of the *Scott* decision. While the *Scott* court did focus on the accused's Fourth Amendment rights, the overarching theme of the decision was an accused's protection from unconstitutional deprivation of rights during the pretrial period. The doctrine of unconstitutional conditions

---

[37] 424 F.3d 888 (9th Cir. 2005). That opinion was withdrawn and superseded by *United States v. Scott*, 450 F.3d 863 (9th Cir. 2006).

[38] Kathleen M. Sullivan, *Unconstitutional Conditions*, 102 HARV. L. REV. 1415 (1989).

[39] *Scott*, 450 F.3d at 865.

[40] *Scott*, 450 F.3d at 867.

is not limited to searches; it protects those constitutional rights that preserve spheres of autonomy.[41]

¶35 The *Scott* court was concerned with the erosion of pretrial rights in general.

> Giving the government free rein to grant conditional benefits creates the risk that the government will abuse its power by attaching strings strategically, striking lopsided deals and gradually eroding constitutional protections. Where a constitutional right "functions to preserve spheres of autonomy . . . [u]nconstitutional conditions doctrine protects that [sphere] by preventing governmental end-runs around the barriers to direct commands."[42]

¶36 The court drew a clear distinction between the rights of probationers and those released before trial on their own recognizance, noting the constitutionally significant distinction between someone who has been convicted of a crime and someone who has been merely accused of a crime but is still presumed innocent.[43] "[P]retrial releasees are not probationers. 'Probation, like incarceration, is a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty.' "[44]

> Scott, far from being a postconviction conditional releasee, was out on his own recognizance before trial. His privacy and liberty interests were far greater than a probationer's. Moreover, the assumption that Scott was more likely to commit crimes than other members of the public, without an individualized determination to that effect, is contradicted by the presumption of innocence: That an individual is charged with a crime cannot, as a constitutional matter, give rise to any inference that he is more likely than any other citizen to commit a crime if he is released from custody. Defendant is, after all, constitutionally presumed to be innocent pending

---

[41] *Scott*, 450 F.3d at 866-67.

[42] *Scott*, 450 F.3d at 866 (alterations in original) (quoting Kathleen M. Sullivan, *Unconstitutional Conditions*, 102 Harv. L. Rev. 1415, 1492 (1989)).

[43] *Scott*, 450 F.3d at 873.

[44] *Scott*, 450 F.3d at 872 (internal quotation marks omitted) (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S. Ct. 3164, 97 L. Ed. 2d 709 (1987)).

trial, and innocence can only raise an inference of innocence, not of guilt.[45]

¶37 The court below focused on the facts surrounding Butler's arrest in setting the conditions for his release. The conditions imposed were "direct commands" and certainly constrained his right to autonomous decision making, his right against self-incrimination, and his right to confidentiality.

¶38 We conclude that the challenged conditions on pretrial release are not permitted by CrRLJ 3.2 or the federal and state constitutions.

¶39 Reversed and remanded.

Cox and Dwyer, JJ., concur.

---

[45] *Scott*, 450 F.3d at 873-74.