[Nos. 36269-4-II; 36270-8-II; 37164-2-II.    Division Two.    August 26, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. AMBER DEE ROSE, *Petitioner*.

THE STATE OF WASHINGTON, *Respondent*, v. DANIELLE WILSON, *Petitioner*.

THE STATE OF WASHINGTON, *Respondent*, v. KEVIN WENTZ, *Petitioner*.

*Bruce J. Finlay*, for petitioners.

*Gary P. Burleson, Prosecuting Attorney*, and *Michael K. Dorcy, Deputy*, for respondent.

¶1 BRIDGEWATER, J. — Amber Dee Rose, Danielle Wilson, and Kevin Wentz appeal the trial court's decision in their respective cases to impose weekly urinalysis (UA) as part of Mason County's standard condition of pretrial release. We consolidated review of these three cases. We hold that because a UA is a warrantless search and there is not any evidence that a weekly UA would increase the likelihood of appearance, the imposition of a UA as a standard condition of pretrial release is inappropriate. We reverse and remand with instructions to remove the weekly UA requirements for all three; and because Wentz's case is still pending, the trial court shall reconsider the amount of Wentz's bond without consideration of his violation of release conditions.

FACTS

Rose

¶2 The State charged Rose with one count of unlawful manufacture of a controlled substance and one count of unlawful possession of a controlled substance with intent to deliver after police found an alleged marijuana grow operation at her residence two years earlier. At her arraignment, the trial court considered conditions for her pretrial release. Her criminal history revealed a conviction for third degree driving with a suspended license from 1989, but nothing else. Her counsel established that Rose had ties to Bremerton, where she had lived and worked for the past two years.

¶3 The State recommended that the trial court release Rose on her own personal recognizance, but it asked the trial court to impose "[o]ther standard conditions, including standard drug conditions that the Court would normally

impose in this kind of case." Report of Proceedings (RP) (Rose, Apr. 11, 2007) at 4.[1] Rose's counsel argued that the trial court should release her on her own recognizance without any conditions under CrR 3.2 and under *United States v. Scott*, 450 F.3d 863 (9th Cir. 2006). The trial court disagreed and imposed the standard package of conditions in drug cases, including weekly UAs. In the order for pretrial release/order for establishing conditions of release, the trial court checked a box indicating that it

> determined that there exists a substantial danger that defendant will commit a serious crime, or that defendant's physical condition will jeopardize defendant's personal safety or that of others, or that defendant will seek to intimidate the witnesses or otherwise unlawfully interfere with the administration of justice.

Clerk's Papers (CP) (Rose) at 4-5. It then imposed the weekly UA requirement. There is no evidence that the trial court imposed this condition because it was reasonably necessary to ensure Rose's appearance at court hearings.

### Wilson

¶4 The State charged Wilson with four counts of first degree unlawful possession of a firearm. At her identification hearing, the State informed the trial court that Wilson had a bail forfeiture for second degree recreational fishing and a previous kidnapping conviction. The State further informed the court that Wilson paid her bail and was present at this identification hearing according to the promise to appear that she signed while posting bail.

¶5 The State recommended that the trial court allow Wilson to remain out on bail, but it asked that the trial court impose several conditions, including weekly UAs. Over defense counsel's argument that no evidence sup-

---

[1] The record in this case contains clerk's papers and/or transcripts from each of the three separate cases. We indicate the relevant party's name in each citation to the record.

ported that Wilson was a drug user and that she had no previous convictions for controlled substance crimes, the trial court imposed conditions including weekly UAs, the first of which the trial court ordered to occur that same day at Wilson's expense. Just as it did in Rose's case, the trial court checked the box indicating a substantial danger justification on the order for pretrial release/order establishing conditions of release.

¶6 Wilson filed a motion to terminate the UA requirement, arguing that both *Scott* and a newer case from Division One of this court, *Butler v. Kato*, 137 Wn. App. 515, 154 P.3d 259 (2007), precluded the trial court from requiring weekly UAs. The trial court denied Wilson's motion.

### Wentz

¶7 The State charged Wentz with one count of unlawful possession of a controlled substance with intent to deliver or, in the alternative, one count of unlawful possession of a controlled substance. It also charged him with two counts of second degree unlawful possession of a firearm. The State informed the trial court that although Wentz had a few misdemeanors and a few theft charges, he did not have any criminal history after 2001. Wentz's counsel argued against weekly UAs, citing *Scott* and *Butler*, but the trial court again imposed the standard conditions for drug cases, including weekly UAs. The trial court made the same substantial danger justification as it did in the other cases. At his omnibus hearing, the trial court denied Wentz's motion to terminate the UA requirement.

¶8 Wentz subsequently appeared before the trial court after he allegedly submitted a UA that was positive for marijuana use. Relying on the positive test UA paperwork, the trial court found that Wentz violated the conditions of his release and exonerated his previous bail, ordering him back into custody until he could post the new bond amount. The trial court ordered this over defense counsel's argument that the trial court could not constitutionally place

him into custody for a warrantless search that disclosed evidence of a crime, the UA paperwork was insufficient evidence without any laboratory cover sheet or explanation, and that Wentz was entitled to due process protections.

## ANALYSIS

### I. UA AS CONDITION OF PRETRIAL RELEASE

¶9 Rose, Wilson, and Wentz argue that the trial court erred by requiring each of them to submit to weekly UAs as a condition of their pretrial release. The UA condition required the accused to provide weekly samples at the Mason County Probation Services office in Shelton, Washington and to pay for the UAs. They present two arguments; first, that the trial court's weekly UA imposition violates CrR 3.2, and next, that the trial court's imposition of the weekly UAs constitutes a suspicionless, warrantless, unconstitutional search.

### CrR 3.2

¶10 Rose, Wilson, and Wentz contend that the trial court violated CrR 3.2 when it imposed weekly UA conditions. We review application of court rules to particular facts de novo. *Butler*, 137 Wn. App. at 521.

¶11 CrR 3.2 governs pretrial release conditions:

**(a) Presumption of Release in Noncapital Cases.** Any person, other than a person charged with a capital offense, shall at the preliminary appearance or reappearance . . . be ordered released on the accused's personal recognizance pending trial unless:

(1) the court determines that such recognizance will not reasonably assure the accused's appearance, when required, or

(2) there is shown a likely danger that the accused:

(a) will commit a violent crime, or

(b) will seek to intimidate witnesses, or otherwise unlawfully interfere with the administration of justice.

. . . .

> In making the determination herein, the court shall, on the available information, consider the relevant facts including, but not limited to, those in subsections (c) and (e) of this rule.

¶12 Rose, Wilson, and Wentz cite to *Butler*, where the trial court imposed conditions following a driving under the influence charge that required the accused to attend at least three Alcoholics Anonymous/Narcotics Anonymous meetings per week and to submit to an evaluation by a state-approved alcohol agency and enroll in any recommended treatment within 30 days. *Butler*, 137 Wn. App. at 520. On review, Division One of this court noted that no information in the record before it showed that the accused would not appear in court when necessary. *Butler*, 137 Wn. App. at 522. The *Butler* court then noted that the trial court found a substantial danger that the accused would engage in a violent crime, which allowed the trial court, under CrRLJ 3.2(d)(10), to impose any condition other than detention to ensure noninterference with the administration of justice and to reduce danger to the community. *Butler*, 137 Wn. App. at 523, 524. Division One then analyzed the limits of CrRLJ 3.2(d)(10), stating that the rule did not permit the trial court to impose onerous or unconstitutional provisions where lesser conditions are available. *Butler*, 137 Wn. App. at 524. After addressing the accused's right against self-incrimination, the *Butler* court addressed the *Scott* decision and then held that CrRLJ 3.2 did not permit the trial court, in that case, to impose weekly UAs. *Butler*, 137 Wn. App. at 532.

¶13 Rose, Wilson, and Wentz contend that their cases are similar because no evidence supported that any of them would be unlikely to appear for required court dates or that they would be likely to commit a violent crime, intimidate witnesses, or otherwise unlawfully interfere with the ad-

ministration of justice.[2] We begin our analysis by determining whether the trial court could in fact set conditions on release in each case, and then by addressing whether weekly UAs constitute a permissible condition.

¶14 It appears from the record here that the trial court imposed the UA conditions as part of a standard pretrial release package used in Mason County for all drug-related offenses. This package included a prohibition against possession of any controlled substances without a valid prescription, a prohibition against use or possession of alcohol or entering any location where alcohol is the principal item of sale, and a requirement to submit to weekly UAs. Mason County uses a preprinted form that contains boxes for the trial court to check. Mason County's order for pretrial release/order establishing conditions of release includes these two relevant sections.

> 8. The Court, having determined that there exists a substantial danger that defendant will commit a serious crime, or that defendant's physical condition will jeopardize defendant's personal safety or that of others, or that defendant will seek to intimidate the witnesses or otherwise unlawfully interfere with the administration of justice, imposes the following additional conditions of release:
>
> . . . .
>
> (h) Defendant shall submit to weekly urinalysis/breath testing for drug/alcohol screening under the direction of Mason County Probation Services at his/her own expense and shall provide the results each week to the Court and to the Mason County Prosecuting Attorney's Office. *The first urinalysis appointment is the first Wednesday following release between 10:00 a.m. until noon.*

CP (Rose) at 4. The form indicates at the bottom of each page that the County based it on CrR 3.2(a) and (c).

---

[2] Unlike *Butler*, the appellants here are not arguing that we should remove all of the court-imposed conditions. Rather, they challenge only the UA requirements. We address only the UA requirements.

Future Appearance

¶15 We first examine whether the record supported that any of the three accused here were not likely to appear for court dates. CrR 3.2(c) provides the factors the trial court shall consider regarding the likelihood of the accused's future appearance:

**Relevant factors—Future Appearance.** In determining which conditions of release will reasonably assure the accused's appearance, the court shall, on the available information, consider the relevant facts including but not limited to:

(1) The accused's history of response to legal process, particularly court orders to personally appear;

(2) The accused's employment status and history, enrollment in an educational institution or training program, participation in a counseling or treatment program, performance of volunteer work in the community, participation in school or cultural activities or receipt of financial assistance from the government;

(3) The accused's family ties and relationships;

(4) The accused's reputation, character and mental condition;

(5) The length of the accused's residence in the community;

(6) The accused's criminal record;

(7) The willingness of responsible members of the community to vouch for the accused's reliability and assist the accused in complying with conditions of release;

(8) The nature of the charge, if relevant to the risk of nonappearance;

(9) Any other factors indicating the accused's ties to the community.

¶16 If the trial court determines that the accused is not likely to appear if released on personal recognizance, the trial court must impose the least restrictive conditions that reasonably ensure that the individual will appear for later court dates. CrR 3.2(b). CrR 3.2(b) contains a list of condi-

tions to be imposed singly or in combination (e.g., restrictions on travel, return to custody during specified hours, electronic monitoring). It then contains a broad provision, CrR 3.2(b)(7), that allows the trial court to impose "any condition other than detention deemed reasonably necessary to assure appearance as required." Significantly, the pretrial orders in these cases contain a provision that appears to specifically address this provision of what conditions are imposed to assure appearance:

9.  Other conditions:

(a) Commit no crimes.

(b) Defendant shall maintain contact with his/her attorney on a weekly basis.

(c) Defendant shall be available to appear in court on three (3) days notice, except during the jury term, when defendant shall be available daily.

(d)_____.

_____[This line is blank].

CP (Rose) at 5. The trial court checked the boxes next to conditions (a), (b), and (c), but did not check the box next to (d). Nor did the trial court write any other conditions in the blank space.

¶17  Further, we note that the UA requirement is not listed under this section of the order for pretrial release/ order establishing conditions of release but, instead, is listed as a condition under the subsection relating to substantial danger. This informs us that, at least on the face of the three orders for pretrial release/orders establishing conditions of release, the trial court did not impose the UA requirement based on a belief that the three accused would likely fail to appear. CrR 3.2(a)(1). In addition, it does not indicate that, even if the trial court believed that the accused were unlikely to appear, the trial court imposed the least restrictive condition to reasonably ensure appearances under CrR 3.2(b).

¶18  We next consider whether evidence in the record supported that any of these three accused were unlikely to appear.

## Rose

¶19 At Rose's arraignment, the trial court recognized that "[s]he does not have a history of failing to appear in court." RP (Rose, Apr. 11, 2007) at 8. The State addressed her criminal record, noting only the third degree driving with a suspended license from 1989. The trial court considered her employment, noting that she had held the same job in Bremerton for the last two years. Over defense counsel's objections to standard conditions for drug cases, the trial court accepted the State's recommendation that the trial court release Rose on her personal recognizance subject to "[o]ther standard conditions, including standard drug conditions that the Court would normally impose in this kind of a case." RP (Rose, Apr. 11, 2007) at 4. There was no determination related to her unlikeliness to appear, and no evidence was introduced that would have supported a trial court finding that Rose would be unlikely to appear. Thus, the trial court could not have imposed weekly UAs for Rose under CrR 3.2(a)(1).

## Wilson

¶20 At Wilson's identification hearing, the trial court found probable cause for the four counts of unlawful possession of a firearm. Defense counsel stated that Wilson had resided in Mason County for the last eight years and was in the process of purchasing a home. The State informed the trial court that Wilson had a bail forfeiture for second degree recreational fishing and a previous kidnapping conviction. The State did not fully research Wilson's complete criminal history or warrant history. The State acknowledged, however, that Wilson paid her bail and was present at this identification hearing according to her promise to appear.

¶21 Over defense counsel's argument that no evidence supported that Wilson was a drug user and that she had no

previous convictions for controlled substance crimes, the trial court imposed conditions, including weekly UAs, the first of which the trial court ordered to occur that same day at Wilson's expense. The trial court apparently based its decision to include standard drug conditions including weekly UAs because Wilson's case was connected to two other cases involving a marijuana grow operation police located at one of her family member's residence.

¶22 The trial court explained at Wilson's subsequent motion hearing that the trial court imposed these tests to ensure that defendants show up to court and are responsive with their respective attorneys. But the trial court never found that Wilson was not likely to appear for future court dates and, instead, relied on the standard conditions for drug cases. Based on the evidence before it, the trial court erred when it determined that Wilson was unlikely to appear for future court dates and, accordingly, such a finding cannot support the trial court's imposition of weekly UAs for Wilson.

## Wentz

¶23 At Wentz's arraignment, the State addressed his criminal history, noting theft charges from 1993, gross misdemeanors before 2002, and nothing within the previous six years. It also referenced a previous failure to appear but described it as "an old one, but it is there on his record that at some time during the pendency of the domestic violence assault fourth he did not appear timely." RP (Wentz) at 9. In this situation, the trial court had evidence that Wentz had previously failed to appear before the court. We hold that the trial court did not err by determining that Wentz's appearance might be unlikely. But again, the trial court did not indicate in its order that this provision related to Wentz's future appearances. Instead it used a substantial danger justification.

■ ¶24 The trial court may impose conditions for pretrial release on a showing that a substantial danger exists that the accused will commit a violent crime, seek to intimidate witnesses, or interfere with the administration of justice. CrR 3.2(d). CrR 3.2(e) provides the relevant factors the trial court shall consider to determine whether a substantial danger exists:

**(e) Relevant factors—Showing of Substantial Danger.** In determining which conditions of release will reasonably assure the accused's noninterference with the administration of justice, and reduce danger to others or the community, the court shall, on the available information, consider the relevant facts including but not limited to:

(1) The accused's criminal record;

(2) The willingness of responsible members of the community to vouch for the accused's reliability and assist the accused in complying with conditions of release;

(3) The nature of the charge;

(4) The accused's reputation, character and mental condition;

(5) The accused's past record of threats to victims or witnesses or interference with witnesses or the administration of justice;

(6) Whether or not there is evidence of present threats or intimidation directed to witnesses;

(7) The accused's past record of committing offenses while on pretrial release, probation or parole; and

(8) The accused's past record of use of or threatened use of deadly weapons or firearms, especially to victims or witnesses.

¶25 If the trial court determines that a substantial danger exists, CrR 3.2(d) provides a nonexclusive list of conditions that the trial court may impose. It applies if there is a "showing that there exists a substantial danger that the accused will commit a violent crime or that the

accused will seek to intimidate witnesses, or otherwise unlawfully interfere with the administration of justice." This nonexclusive list allows the trial court to "[i]mpose any condition other than detention to assure noninterference with the administration of justice and reduce danger to others or the community." CrR 3.2(d)(10).

## Rose

¶26 In the Rose case, no evidence in the record supported that a substantial danger existed that she would commit a violent crime, intimidate witnesses, or otherwise interfere with the administration of justice under CrR 3.2(d). Accordingly, the trial court could not have based the weekly UA condition on CrR 3.2(d)(10). The showing of substantial danger does not support the trial court's imposition of weekly UAs. Because the evidence before the trial court failed to support that Rose was unlikely to appear, or that she would commit a violent crime, intimidate witnesses, or interfere with the administration of justice, it was error to impose weekly UAs as pretrial release conditions in Rose's case.

## Wilson

¶27 In the Wilson case, the trial court imposed the weekly UA condition based on its desire to ensure that Wilson would appear for court. "What we're trying to do is make sure that you are not using while we're here, because we need you to be available to counsel." RP (Wilson, Apr. 9, 2007) at 5. It is unclear whether the trial court actually considered if Wilson presented a substantial danger, but CrR 3.2(e) allowed the trial court to consider Wilson's previous kidnapping conviction and the nature of her current charge of unlawful possession of a firearm. CrR 3.2(e)(1), (3). But no evidence supports that the trial court considered this as a basis for imposing the weekly UAs. Accordingly, the trial court erred when it imposed weekly UAs in Wilson's case.

Wentz

██ ¶28 In contrast, the Wentz trial court specifically stated its concern for the safety of the community. Evidence showed that Wentz had a disabling predicate conviction, and he was in possession of multiple firearms at the time of his arrest. Based on the current charges and Wentz's criminal history, the trial court did not err by finding that Wentz presented a risk of substantial danger. Accordingly, the trial court was entitled to rely on CrR 3.2(d)(10) to impose any condition other than detention to ensure non-interference with the administration of justice and to reduce danger to the community. CrR 3.2(d)(10) does not specifically preclude the use of UAs as pretrial conditions.[3]

¶29 Even assuming that a trial court can impose a condition guaranteeing future appearance after a determination of substantial dangerousness, no evidence in Wentz's case supported that he would be likely to commit a violent crime or intimidate a witness. CrR 3.2(a)(2). Accordingly, the only remaining possibility is that the trial court found there was a likely danger that Wentz would "otherwise unlawfully interfere with the administration of justice." CrR 3.2(a)(2)(b). Although it is tenuous to assume that a finding of substantial danger would warrant a condition designed to promote appearance, we presume that failing to attend a hearing is an unlawful interference with the administration of justice. The trial court did specifically prohibit Wentz from possessing dangerous weapons or firearms, presumably to protect the community from danger. Because we do not feel that this analysis ends our inquiry, we, like the *Butler* court, will determine whether the weekly UA condition passes constitutional muster.

---

[3] We note that it seems that the more appropriate section to impose UA conditions, if UAs are permissible, would be under CrR 3.2(b). While it is tempting to hold that the trial court must address conditions for appearance under CrR 3.2(b) and that it can never impose conditions for appearance based on a finding of substantial danger, we do not reach that issue here.

UAs as Pretrial Conditions

██ ¶30 Wentz argues and the State agrees that UAs are searches. Courts generally agree that collection and analysis of biological samples, including urine, constitute a search for Fourth Amendment[4] purposes. *State v. Surge*, 122 Wn. App. 448, 452, 94 P.3d 345 (2004), *aff'd*, 160 Wn.2d 65, 156 P.3d 208 (2007). But the Fourth Amendment is not a guarantee against all searches, only against unreasonable searches. *Surge*, 122 Wn. App. at 452.

██ ¶31 Article I, section 7 of the Washington Constitution provides greater protection to individual privacy rights than does the Fourth Amendment to the United States Constitution. *State v. Rankin*, 151 Wn.2d 689, 694, 92 P.3d 202 (2004). "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Const. art. I, § 7. This court considers a warrantless search per se unconstitutional unless it falls within one of the few exceptions to the warrant requirement. *State v. Ladson*, 138 Wn.2d 343, 349, 979 P.2d 833 (1999).

██ ¶32 Wentz contends that the UA is a warrantless search conducted without probable cause. He cites *Scott*, 450 F.3d at 865, where the trial court released the accused on his own recognizance following his drug-related arrest in Nevada. The trial court imposed pretrial release conditions requiring the accused to sign a form stating that he agreed to comply with conditions, including consent to random drug testing anytime during the day or night without a warrant and to allow officers to search his house for drugs anytime without a warrant. *Scott*, 450 F.3d at 865. There was no evidence that the conditions resulted from any findings made at a hearing. *Scott*, 450 F.3d at 865. Instead,

---

[4] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

the judge checked conditions on a standard list of pretrial release conditions. *Scott*, 450 F.3d at 865.

¶33 After an informant tipped off the police, the officers went to the accused's house and administered a urine test, which tested positive for methamphetamine, and the subsequent search of the house revealed a shotgun, for which the State initiated a separate criminal prosecution. *Scott*, 450 F.3d at 865. The district court granted the accused's motion to suppress the shotgun and the statements he made to officers because the officers did not have probable cause to justify the warrantless search. *Scott*, 450 F.3d at 865. During the interlocutory appeal, the *Scott* court addressed the special needs exception to the warrant requirement. *Scott*, 450 F.3d at 868. The special needs exception relaxes the probable cause requirements when special needs, beyond the normal need for law enforcement, make insistence on the otherwise applicable level of suspicion impracticable. *Scott*, 450 F.3d at 868.

¶34 The United States argued that searching pretrial releasees for drugs served two special needs: (1) protecting the community from criminal defendants released pending trial and (2) ensuring that the accused shows up for trial. *Scott*, 450 F.3d at 869. The *Scott* court held that only the second could be considered outside the normal need for law enforcement, and even then, it must be distinguishable from the general interest in crime control. *Scott*, 450 F.3d at 870.

¶35 The *Scott* court noted that drug use could increase the likelihood of the accused absconding but that the government must empirically establish that drug use is a good predictor for failing to appear, which it did not do. *Scott*, 450 F.3d at 870. Accordingly, the *Scott* court was unable to conclude that the condition was necessary to ensure his appearance at trial.[5] *Scott*, 450 F.3d at 871.

---

[5] After addressing the balance between the defendant's consent to the conditions with the decrease in his reasonable expectation of privacy as it pertains to his home, the *Scott* court included a footnote indicating, "The balance usually will

Because the government failed to demonstrate that Nevada had special needs for obtaining the drug-testing release condition, it cannot justify the search—testing Scott for drugs without probable cause—using this approach. As discussed above, we hold only that the government has not made the requisite special needs showing in this case: It has not, for example, demonstrated a pattern of "drug use leading to nonappearance" in court, nor pointed to an individualized determination that Scott's drug use was likely to lead to his nonappearance. The government in this case has relied on nothing more than a generalized need to protect the community and a blanket assertion that drug-testing is needed to ensure Scott's appearance at trial. Both are insufficient.

*Scott*, 450 F.3d at 872 (citation omitted).

¶36 The State contends that the special needs exception applies here because the condition before this court, weekly UAs, directly relates to the specifically authorized interest charged to the trial court of protecting the community from a risk posed by one under its jurisdictional authority. The trial court found that there was a substantial danger that Wentz would commit a serious crime, or that his physical condition would jeopardize his safety or the safety of others or otherwise interfere with the administration of justice. As a result, the trial court imposed, along with the weekly UA condition that required him to pay for his weekly UAs, conditions prohibiting him from using alcohol and drugs other than prescriptions. The State contends that the UA condition serves a compelling government interest beyond that of the normal need for law enforcement and criminal investigation.

¶37 But like in *Scott*, there is no indication that the State established that drug use was a good indicator that Wentz would fail to appear. Nor did it make an individualized determination that Wentz's drug use, if any, would lead to his nonappearance. Although the trial court made a finding that Wentz presented a danger to the community, it

---

be struck differently in cases where the defendant is required to report for drug-testing at a location away from his home." *Scott*, 450 F.3d at 872 n.10.

did not tie that danger to a likelihood of failing to appear. Accordingly, we follow the *Scott* court's reasoning and hold that the State failed to establish a special needs exception to the warrantless, suspicionless searches. We hold that, without a showing that drug use leads to a higher likelihood of absconding or an individual determination by the trial court that Wentz's drug use would increase the likelihood of him failing to appear, the special needs warrant exception does not apply here. Thus, the trial court should not have required weekly UAs in Wentz's case.

## II. Release Revocation Hearing

¶38 Wentz contends that the trial court violated his due process rights when it failed to give him an opportunity to testify or challenge the evidence that his December 24, 2007 UA showed positive for marijuana. Wentz bases this entire argument on the way that trial courts treat probationers. But we need not address this argument on due process grounds.

¶39 Instead, we follow the same reasoning as the *Scott* court and exclude the evidence. We suppress evidence seized during an illegal search under the exclusionary rule. *See Ladson*, 138 Wn.2d at 359. We also exclude evidence derived from an illegal search under the fruit of the poisonous tree doctrine. *See State v. O'Bremski*, 70 Wn.2d 425, 428, 423 P.2d 530 (1967). Here, the weekly UAs constituted an illegal search of Wentz and we suppress this evidence showing that Wentz violated his release conditions.

¶40 Accordingly, we reverse and remand with instructions to remove the weekly UA requirements for Rose, Wilson, and Wentz. We also instruct the trial court to reconsider the amount of Wentz's bond, but to exclude the evidence of his weekly UAs and the violation of his release conditions that it previously considered.

Van Deren, C.J., and Quinn-Brintnall, J., concur.