**FILED**
**OCTOBER 18, 2022**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 38317-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JASON ALLAN JOHANSON, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Jason Johanson appeals his conviction for assault in the

third degree. He argues his use of force against the officer was constitutionally

permissible because he was unlawfully seized, detained, arrested, or he reasonably feared

serious injury. He also argues he received ineffective assistance of counsel. We disagree

with his arguments and affirm.

FACTS[1]

In April 2021, Jason Johanson got onto a bus that was parked at the Pullman transit station. The bus driver, Benjamin Zylstra, informed Mr. Johanson that he needed to wear a facemask on the bus. Mr. Johanson responded, "It's not going to happen," and began yelling that the mask mandate is "Nazi bullshit." Report of Proceedings (June 28, 2021) (RP) at 147-48. He declared the COVID-19 virus is "a hoax" and that he is "17 moves ahead like chess." RP at 149-50.

Mr. Zylstra called and requested the transit manager to come out and speak with Mr. Johanson. The transit dispatch called the safety coordinator, whose job responsibilities include talking to unruly passengers. Meanwhile, Mr. Johanson yelled that Mr. Zylstra is "not a health official" and "not a scientist." RP at 150. He told Mr. Zylstra:

> You're nothing special. . . . Do you know that real pain is (indiscernible)? You're obeying the orders of satanic pedophiles. You'll fuck around and find out. You want to be a Nazi? You want to tell me I need a mask? They're just $5 at the store. You're not a health official; you're a bus driver. Now drive the goddamn bus.

RP at 151.

---

[1] The substantive facts are undisputed; all relevant interactions were recorded (either by dispatch audio or bodycam video) and are transcribed in the record as they were played at trial.

Dispatch asked if Mr. Johanson had a medical exemption to ride the bus without a mask, to which Mr. Zylstra responded, "I don't know if that conversation would be particularly productive at this moment." RP at 152. Mr. Johanson stated: "I already talked to authorities. Fuck around. I work for military intelligence. You are a goddamn brainwashed civilian. Now, hit the gas, bitch." RP at 153. Mr. Johanson said officers would show up "in a three man team." RP at 155. He then got out of the bus.

Soon after, Pullman Police Officer Jared Haulk arrived. A transit employee was speaking with Mr. Johanson. Officer Haulk began to talk to another employee, but heard Mr. Johanson screaming and decided to approach him. Bodycam footage captured their interaction:

> OFFICER HAULK: . . . Hey, Jason?
> MR. JOHANSON: What's up? How's it going?
> OFFICER HAULK: Hey, man, you know they have the rules for the masks, all right?
> MR. JOHANSON: Yeah, I will not (indiscernible) that issue.
> OFFICER HAULK: Then you can't ride on the bus.
> MR. JOHANSON: I work with military intelligence and Covid 19 is a hoax. And you're not going to deny me my constitutional rights that you supposedly swear and supposed to uphold. So you better decide if you're a patriot or a traitor.
> OFFICER HAULK: Okay, man. Well, this is it—you can't ride on the bus if you can't wear a mask.

RP at 168-69.

At this point, Officer Holden Humphrey arrived and approached Officer Haulk and

Mr. Johanson. He asked:

> OFFICER HUMPHREY: Do they want him out of here or?
> OFFICER HAULK: Yeah, they just want him gone. They don't know if he's already trespassed or not.
> OFFICER HUMPHREY: All right.

RP at 187.

Then Officer Josh Bray arrived and approached. Mr. Johanson addressed the

officers:

> MR. JOHANSON: . . . You better honor your fucking code. I work with military intelligence and you are a local PD, right?
> OFFICER HUMPHREY: That's right. All right, Jason, I'm going to set up some ground rules. If you take a step towards me, you're going in handcuffs so stay where you're at.
> MR. JOHANSON: Okay.
> OFFICER HUMPHREY: I'm going to set up those ground rules so we don't have any issues, okay? Don't come towards me or my partner.
> MR. JOHANSON: And if you approach me, I will defend my person—I am constitutionally obligated to. I have human rights beyond the Constitution. Do you understand what human rights are?
> OFFICER HAULK: Jason, do you have stuff inside the bus?
> MR. JOHANSON: I don't think so.
> OFFICER HAULK: Okay.
> MR. JOHANSON: I have a right to take the bus and go to the grocery store, right?
> OFFICER HAULK: Not right now you don't.
> MR. JOHANSON: Why not?
> OFFICER HAULK: If you don't wear a mask, you can't ride the bus.
> MR. JOHANSON: [Yelling] What fucking country do I live in?

4

RP at 187-88.

At this point, Mr. Johanson stepped off the curb and toward the officers. Officer Haulk yelled, "Stop." RP at 188. Officer Humphrey stepped toward Mr. Johanson and raised on open hand and said, "Stay away." RP at 188. Mr. Johanson then stepped back onto the curb but swatted Officer Humphrey's arm. A scuffle ensued. During the brief scuffle, Mr. Johanson's hand or fingers swiped Officer Haulk's hat and face. Officer Bray was able to handcuff Mr. Johanson. Officer Haulk's hat was damaged and his lip was a little numb for 5 to 10 minutes.

After his arrest, Mr. Johanson asked the officers, "Are you happy now, Nazis?" RP at 203. Officer Haulk said, "No, we've got you in handcuffs because you assaulted us." RP at 203. Officer Bray said, "Jason, you're out of your goddamn mind. You just hit an officer." RP at 203. The officers walked him toward the patrol car and asked whether they could get anything off the bus for him. They also read *Miranda*[2] rights from a preprinted card, to which Mr. Johanson said he understood. The following exchange then took place:

> MR. JOHANSON: . . . I don't think I harmed anybody, did I?
> OFFICER BRAY: No, but you did—you did hit them.
> MR. JOHANSON: I slapped somebody's hand when they approached me because I felt threatened.

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

5

> OFFICER BRAY:  Okay.
> MR. JOHANSON:  So I—you told me not to take a step towards you and I did.
> OFFICER BRAY:  You did.
> MR. JOHANSON:  So I fucked up.

RP at 207.  Before Mr. Johanson entered the patrol car, he stated:

> It's a necessary thing.  I had to create this conflict for a bigger purpose.  This is chess, not checkers.  I'm not going to let this be a (indiscernible) world order bullshit happen.  You're not going to destroy my country; fuck China.
> OFFICER BRAY:  I understand—I understand the frustration.
> MR. JOHANSON:  I knew what I need to do for this country and for humanity.

RP at 210-11.

The State charged Mr. Johanson with third degree assault against Officer Humphrey (count 1, swatting his arm) and third degree assault against Officer Haulk (count 2, swiping his hat/lip).  After a psychological evaluation deemed Mr. Johanson competent, the matter proceeded to trial.

*Trial*

The State called Mr. Zylstra and the three responding officers.  The officers testified that Mr. Johanson was free to leave while they were trying to figure out if the transit system wanted to trespass him.  They testified they would have let him go and notify him later if he got a trespass order.  Officer Humphrey testified they never told Mr.

6

Johanson he was restrained and he could have walked away. They only handcuffed him to "stop him from assaulting us further." RP at 191.

On cross-examination, Officer Bray explained his use of force during the scuffle. He explained he approached Mr. Johanson from behind, "intending to put him in a vascular neck hold." RP at 212. He denied the restraint was a chokehold because the restraint does not cut off airflow or blood flow to the brain. The officer admitted wrapping his arm around Mr. Johanson's neck, but denied applying pressure.

Mr. Johanson called a person who witnessed the brief scuffle. She testified she was between 10 and 20 feet away during the scuffle and did not see Mr. Johanson throw punches at the officers.

In closing, the defense argued Officer Humphrey instigated the assault and that Mr. Johanson did not break the law by moving toward the police officers and therefore the officer had no excuse to grab him. The defense further argued that no witness saw Mr. Johanson hit an officer and that whatever contact Mr. Johanson made during the brief scuffle was unintentional.

The jury found Mr. Johanson guilty of assaulting Officer Humphrey (count 1, swatting his arm) and not guilty of assaulting Officer Haulk (count 2, swiping his hat/lip). The court sentenced him to time served, which was 58 days in jail.

Mr. Johanson timely appealed.

ANALYSIS

ISSUES RAISED FOR FIRST TIME ON REVIEW

Mr. Johanson contends the police unlawfully seized, detained, or arrested him, and that his use of force defending himself was lawful.  For the reasons set forth below, we conclude these challenges were not properly preserved and we decline to review them.

We generally do not review issues not raised to the trial court.  RAP 2.5(a).  An exception to this rule exists when the claimed error is manifest and affects a constitutional right.  RAP 2.5(a)(3); *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009).  In analyzing whether a constitutional right is implicated, we do not assume the error is of constitutional magnitude; rather, "[w]e look to the asserted claim and assess whether, if correct, it implicates a constitutional interest as compared to another form of trial error." *Id.*  To establish an error is manifest, an appellant must demonstrate that the constitutional error had practical and identifiable consequences at trial.  *Id.* at 99.

Mr. Johanson acknowledges he is raising these arguments for the first time on appeal but urges this court to review them because the challenged police conduct impinged on his constitutional right to be free from unlawful restraint.

8

"No person shall be disturbed in his private affairs . . . without the authority of law."  WASH. CONST. art. I, § 7.  This provision protects the privacy interests held by citizens to be safe from governmental trespass absent a warrant.  *State v. Myrick*, 102 Wn.2d 506, 511, 688 P.2d 151 (1984).  A warrantless seizure is unconstitutional unless an exception applies.  *State v. Rankin*, 151 Wn.2d 689, 695, 92 P.3d 202 (2004).  An unlawful seizure, detention, or arrest is therefore of constitutional magnitude under RAP 2.5(a)(3).

Still, we must determine whether the error is manifest or so obvious from the record that we can review it.  *See State v. WWJ Corp.*, 138 Wn.2d 595, 602, 980 P.2d 1257 (1999).  As part of this analysis, we "must preview the merits of the claimed constitutional error to see if the argument has a likelihood of succeeding."  *Id*. at 603.  Thus, we discuss the merits of Mr. Johanson's claims regarding the officers' conduct to assess whether his argument would have succeeded at trial.

The parties dispute whether Mr. Johanson was seized or detained, whether he was under arrest prior to swatting Officer Humphrey's arm, and whether Mr. Johanson was in danger of serious injury so that he would be justified in resisting.  We address the issues in turn.

*Mr. Johanson was not seized*

Mr. Johanson contends the police unlawfully seized him when they surrounded him and told him not to take a step toward them. We disagree.

"Whether police have seized a person is a mixed question of law and fact." *State v. Harrington*, 167 Wn.2d 656, 662, 222 P.3d 92 (2009). Under our state constitution, a seizure occurs "when considering all the circumstances, an individual's freedom of movement is restrained and the individual would not believe he or she is free to leave or decline a request due to an officer's use of force or display of authority." *Rankin*, 151 Wn.2d at 695. This objective determination requires looking at all the actions of the police officers. *Id.*

Here, Officer Humphrey asked Officer Haulk if the transit employees wanted Mr. Johanson gone or arrested. Officer Haulk answered, "Yeah, they just want him gone." RP at 187. This was said a few feet away from Mr. Johanson. He therefore knew the officers were not there to arrest him and that he was free to leave.

But instead of leaving, Mr. Johanson angrily argued that he should be allowed to ride the bus without a facemask. It was at this time that Officer Humphrey set the ground rules and said if Mr. Johanson took a step toward them, he would be handcuffed. Mr.

Johanson said he understood.  It was Mr. Johanson's ignoring of this instruction that led to him swatting Officer Humphrey's outstretched arm that led to the scuffle and arrest.

Looking objectively at what was said and what happened, we conclude that Mr. Johanson was not seized before he swatted Officer Humphrey's outstretched arm.  Rather, he was free to leave.

*The officers had reasonable suspicion to interact with Mr. Johanson*

Mr. Johanson argues the police conducted an invalid *Terry*[3] stop.  We disagree.

A *Terry* stop is a recognized exception to the requirement that seizures require a warrant or probable cause.  *State v. Ladson*, 138 Wn.2d 343, 349, 979 P.2d 833 (1999). These types of seizures are permitted if based on the totality of the circumstances known to the police officer at the inception of the stop, there are "'specific and articulable facts giving rise to a reasonable suspicion that the person stopped is, or is about to be, engaged in criminal activity.'"  *State v. Armenta*, 134 Wn.2d 1, 10, 948 P.2d 1280 (1997) (quoting *State v. Gleason*, 70 Wn. App. 13, 17, 851 P.2d 731 (1993)).

Here, Mr. Johanson insisted on riding a public bus without a facemask.  At the time, riding a public bus without a facemask was a crime.  *See* RCW 70.05.120(4) (violation of a health officer's order is a misdemeanor); Wash. Sec'y of Health, Order

---

[3] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

No. 20-03 (Wash. June 24, 2020), http://mrsc.org/getmedia/d6167fa2-f2a3-427f-936b-f630098d859f/Secretary_of_Health_Order_20-03_Statewide_Face_Coverings.aspx (wearing facemasks required on public transportation).  Further, Mr. Johanson was being disorderly and refused to leave.  He could have been cited with trespass.  These facts were known to the officers.  We conclude that the brief interaction[4] between the officers and Mr. Johanson before the scuffle was permissible.

*Mr. Johanson was lawfully arrested*

Mr. Johanson next argues, even if this court was to find he was not unlawfully seized or detained, he was unlawfully arrested when the officers moved in to handcuff him after he stepped off the curb toward them.  He argues the police lacked probable cause to arrest him.  We disagree with this description of the events.

"'An arrest takes place when a duly authorized officer of the law manifests an intent to take a person into custody and actually seizes or detains such person.'"  *State v. Patton*, 167 Wn.2d 379, 387, 219 P.3d 651 (2009) (quoting ROYCE A. FERGUSON, JR., WASHINGTON PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 3104, at 741 (3d ed. 2004)).  Here, Mr. Johanson was not arrested for stepping off the curb.  When he stepped

---

[4] We do not refer to this interaction as a detention.  The colloquy between the officers shows they were trying to de-escalate a tense situation and get Mr. Johanson to leave the transit station.  They were not there to investigate or pursue charges.

off the curb, Officer Humphrey moved toward him, raised one open hand, and said, "Stay away." RP at 188. This action was not an arrest.

Mr. Johanson was arrested after swatting Officer Humphrey's outstretched arm. It was at that point the officers seized him and took him to the ground.

A person may not be arrested unless the police have probable cause that the person committed a crime. *See State v. Gaddy*, 152 Wn.2d 64, 70, 93 P.3d 872 (2004). Here, the officers saw Mr. Johanson swat Officer Humphrey's arm, which is a third degree assault. We conclude that Mr. Johanson was lawfully arrested.

*Mr. Johanson was not in danger of serious injury*

Mr. Johanson next argues he used lawful force in defending himself from serious injury. We again disagree with his description of the events.

The conviction on appeal relates to the first incident—Mr. Johanson swatting Officer Humphrey's outstretched arm. It does not relate to the second incident—Mr. Johanson swiping Officer Haulk's hat and lip during the scuffle. The jury found Mr. Johanson not guilty of that alleged assault.

Mr. Johanson understood the ground rules but ignored them and stepped toward the officers. Officer Humphrey stepped toward Mr. Johanson, raised an open hand, and ordered him to stay back. Mr. Johanson took a step back but then swatted Officer

13

Humphrey's arm. Mr. Johanson was not in any danger before he swatted Officer

Humphrey's arm, and he was not entitled to use force against the officer.

Our preview of Mr. Johanson's unlawful seizure, detention, arrest, and lawful

defense arguments show that they were unlikely to succeed at trial. Therefore, although

the challenges implicate constitutional rights, any related error did not have practical and

identifiable consequences at trial and is not manifest under RAP 2.5(a)(3). We decline to

review them.

INEFFECTIVE ASSISTANCE OF COUNSEL

Mr. Johanson contends he received ineffective assistance of counsel because his

defense counsel failed to challenge the lawfulness of his arrest and failed to request a

self-defense instruction. We disagree.

The right to effective assistance of counsel is guaranteed by both the state and

federal constitutions. *State v. Hendrickson*, 129 Wn.2d 61, 77, 917 P.2d 563 (1996). To

succeed on an ineffective assistance claim, a defendant must show both that (1) defense

counsel's performance was deficient or fell below an objective standard of

reasonableness, and (2) the deficient performance prejudiced the outcome at trial. *State v.*

*Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004); *Strickland v. Washington*,

466 U.S. 668, 684-90, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). We presume counsel is

effective, and the defendant bears the burden of proving there was no conceivable trial strategy or tactic explaining counsel's performance. *State v. Kyllo*, 166 Wn.2d 856, 862-63, 215 P.3d 177 (2009).

As discussed above, any argument that Mr. Johanson was unlawfully arrested was unlikely to succeed at trial. As also discussed above, Mr. Johanson was not legally justified in swatting Officer Humphrey's outstretched arm before the scuffle. Therefore, counsel's failure to advance those arguments was not deficient performance. We need not address prejudice when deficiency has not been established. *State v. Crow*, 8 Wn. App. 2d 480, 507, 438 P.3d 541 (2019).

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____          _____
Siddoway, C.J.                                                Staab, J.

15