# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  58503-1-II |
| Respondent, | |
| v. | |
| TIMOTHY JAMES SCALES, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, P.J. — Timothy J. Scales appeals his conviction for second degree unlawful possession of a firearm, arguing that the superior court erred in denying his CrR 3.6 motion to suppress evidence found during his arrest.  Scales also argues the trial court erred by failing to enter written findings of fact and conclusions of law following a stipulated facts bench trial.  We affirm Scales' conviction but remand for the trial court to enter written findings of fact and conclusions of law for the bench trial it conducted.

## FACTS

In February 2023, the State charged Scales with second degree unlawful possession of a firearm.  Scales moved to suppress the firearm discovered during a search incident to his arrest, arguing that he was unlawfully seized prior to his arrest.  At the hearing, the only witness who testified was the arresting officer, Sergeant Ryan Moody.

Following the hearing, the trial court entered its written findings of fact and conclusions of law.  The trial court entered the following written findings on the "undisputed" facts:

I.

On February 14, 2023, in Lakewood, Washington, multiple squad cars were dispatched to investigate a shooting in the area of the Crown Pointe Apartments and Wards Lake Park. While there, police also came into contact with an individual (not the defendant) wanted on a felony warrant and had taken him into custody. As a result of these two investigations, there were a number of police officers present, (approximately 10 to 14) the apartment parking lot was congested, and the squad cars were parked in a way that prevented vehicles from entering or leaving.

II.

Sgt. Moody observed a car with two occupants parked in the Southwest corner of the apartment parking lot. It was unclear whether the vehicle's engine was running or whether the occupants of the vehicle had arrived before or after the squad cars. The sergeant approached and asked why they were there. It was 10:40 PM, and Sgt. Moody shone his flashlight at the occupants while they talked.

III.

Defendant Timothy Scales was in the driver's seat and Ms. Marino was in the front passenger's seat. Scales is Asian. Scales and Marino advised they had been visiting one of the apartments. Sgt. Moody advised that the officers should have their cars out of the way soon so that the couple could go to dinner, and he ended the contact.

IV.

Sgt. Moody returned to his patrol car and performed a records search that showed the vehicle was not registered to the defendant but to a woman. He ran a CAD search for prior police contacts with the vehicle and ascertained the driver was Timothy Scales. He confirmed this through a photo of the defendant on his computer. The sergeant ran a records check on Scales and learned that he was a convicted felon prohibited from possessing firearms, that he had a prior conviction for unlawful possession of a firearm, and that there were outstanding warrants for Scales' arrest, bookable at Nisqually jail.

V.

Approximately eight to ten minutes after ceasing his initial contact, Sgt. Moody returned to the parked car and arrested Scales based on his active warrants. The arrest was audio and video recorded.

VI.

> Incident to arrest, police located a loaded firearm in Scales' waistband.

### VII.

> On camera after being advised of his Miranda[1] rights and waiving them, the Defendant admitted he was a convicted felon. He also admitted that he knew he was not allowed to possess firearms.

Clerk's Papers (CP) at 61-62.

Based on the trial court's findings of fact, the trial court entered the following conclusions of law:

### I.

> The court employs the standard in *State v. Sum*, 199 Wn.2d 627, 631, 511 P.3d 92 (2022), viewing the facts as an objective observer who is aware that purposeful discrimination as well as implicit, institutional, and unconscious biases have resulted in disproportionate police contacts, investigative seizures, and uses of force against Black, Indigenous, and other People of Color (BIPOC) in Washington. The court concludes that such a reasonable person would have understood that the police investigation did not involve Scales or Marino and that Sgt. Moody was not detaining them in the initial contact. Sgt. Moody never told Scales that he could not leave. He did not take Scales' driver's license or car keys. And he did not search Scales' vehicle. Neither the number of officers present for unrelated matters nor Sgt. Moody's use of his flashlight in the darkness turned this initial contact into a detention. At this point, nothing was done for the purpose of detaining Scales. Scales was only detained during the second contact when he was lawfully arrested based on the active warrants.

### II.

> The Court denies the defendant's motion to suppress. The defendant was not detained by Sgt. Moody at the initial contact. Mr. Scales and his passenger were free to leave if they so desired. The fact that Mr. Scales' vehicle was blocked in was happenstance, as the police were investigating another incident involving gunfire and there was no conduct on the part of Sgt. Moody or any other law enforcement officer to intentionally detain Mr. Scales until the Sgt. returned to the vehicle and placed Mr. Scales under arrest.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct 1602, 16 L. Ed. 2d 694 (1966).

CP at 63.

After the trial court denied his motion to suppress, Scales waived his right to a jury trial and agreed to a bench trial based on stipulated facts. As part of the stipulation and waiver, Scales agreed that "by proceeding in this fashion, [Scales] will still be able to pursue a challenge to the Court's ruling denying his motion to suppress evidence, but he waives his right to appeal all other issues, to include any lawful sentence imposed by the Court." CP at 15. The trial court found Scales guilty and imposed a standard range sentence of 12 months and one day.

Scales appeals.

ANALYSIS

A. MOTION TO SUPPRESS

Scales argues that the trial court erred in denying his motion to suppress because he was seized by law enforcement during Sergeant Moody's initial contact with him. We disagree.

We review whether a person was unlawfully seized in violation of article I, section 7 of the Washington constitution de novo. *Sum*, 199 Wn.2d at 636-37. Therefore, we review de novo the trial court's conclusion that Scales was not unlawfully seized during Sergeant Moody's initial contact. *See id.*[2]

_____

[2] CrR 3.6(b) requires the trial court to enter written findings of fact and conclusions of law on a motion to suppress. Generally, we review findings of fact for substantial evidence and review challenged conclusions of law de novo. *State v. Levy*, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006).

Here, the trial court entered undisputed findings of facts. On appeal, Scales assigned error to the trial court's findings of fact III and V "to the extent they find police contact ended for eight to ten minutes before being reinitiated with a second contact." Br. of Appellant at 1. However, Scales does not argue that the findings are not supported by substantial evidence and, instead, appears to dispute the legal implication that the allegedly unlawful seizure was terminated when Sergeant Moody terminated the initial contact with Scales. Because Scales has not provided argument or authority that substantial evidence does not support the trial court's findings of fact,

4

Scales has the burden of showing that he was seized. *Id.* at 636. "'[A] seizure occurs, under article I, section 7, when considering all the circumstances, an individual's freedom of movement is restrained and the individual would not believe [they are] free to leave or decline a request due to an officer's use of force or display of authority.'" *Id.* (alterations in original) (quoting *State v. Rankin*, 151 Wn.2d 689, 695, 92 P.3d 202 (2004)). Whether a seizure has occurred is determined by objectively looking at the actions of law enforcement; the subjective intent of the law enforcement officers is irrelevant unless that intent was communicated to the defendant. *Id.*

A person is not seized merely because a police officer initiates conversation in a public place and asks for identification. *Id.* at 656. Instead, our Supreme Court has recently clarified "that a person has been seized as a matter of independent state law if, based on the totality of the circumstances, an objective observer could conclude that the person was not free to leave, to refuse a request, or to otherwise terminate a police encounter due to law enforcement's display of authority or use of physical force." *Id.* at 653. "For purposes of this analysis, an objective observer is aware that implicit, institutional, and unconscious biases, in addition to purposeful discrimination, have resulted in disproportionate police contacts, investigative seizures, and uses of force against BIPOC in Washington." *Id.* Further relevant considerations include the number and type of questions posed or requests made and the extent to which similar law enforcement encounters are disproportionately associated with race or ethnicity. *Id.* at 654.

---

we consider all the findings of fact verities on appeal. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 808, 828 P.2d 549 (1992); *Sum*, 199 Wn.2d at 636. Accordingly, the only issue we consider on review is whether the trial court erred by concluding that Scales was not seized prior to his arrest. *See Sum*, 199 Wn.2d at 636.

Here, Sergeant Moody briefly contacted Scales while he was sitting in his vehicle at the scene of a shooting investigation. Sergeant Moody only inquired as to why Scales was at the apartment complex. Sergeant Moody did not ask Scales his name, ask for identification, or indicate to Scales that he was suspected of any criminal activity. There is nothing in the record of the interaction that would indicate to an objective observer, even aware of implicit, institutional, and unconscious bias, that considerations of race transformed Sergeant Moody's contact with Scales into a seizure because there was no evidence Scales was singled out and it is reasonable for officers to contact people present at the scene of a shooting investigation. Further, Sergeant Moody's direct contact with Scales did not include any show of force or authority that would indicate that Scales was being detained—in fact, Sergeant Moody actually terminated the contact by ending the conversation and walking away from Scales and the vehicle. *See id.* at 653. And Sergeant Moody gave Scales no indication that he was intending to run a records search on the vehicle; thus, an objective observer would conclude that when Sergeant Moody left, the contact with Scales ended.

Moreover, the presence of police cars in the parking lot preventing Scales from moving his vehicle did not result in a seizure. The police presence at the apartment complex was related to a shooting investigation and was not directed at Scales. The fact that police cars blocked Scales' vehicle from leaving the parking lot was incidental to that separate investigation, not a show of force resulting in Scales' detention. *See id.* The result would have been the same if other emergency response vehicles, such as fire engines or ambulances, had blocked the parking lot. Further, Sergeant Moody did not ask any questions which indicated that Scales was the subject of shooting investigation, and, therefore, the incidental blocking of Scales' vehicle was not transformed into a seizure. *See State v. Johnson*, 8 Wn. App. 2d 728, 744, 440 P.3d 1032 (2019)

6

(holding a seizure occurred based on the "sudden presence of two uniformed officers so soon after the vehicle had parked, the shining of flashlights into the vehicle, the question, repeated, as to whether the vehicle belonged to Taylor Smith, and the request for the driver's name and proof of his identity would lead a reasonable innocent person to believe that the vehicle, and by extension its driver, was the subject of an ongoing criminal investigation").

Based on the totality of the circumstances, an objective observer would conclude that Scales was free to leave the apartment complex on foot, leave his vehicle and return to the apartment he had been visiting, or otherwise remove himself from the police presence. *See id.* (emphasizing that police conduct prevented the defendant from leaving in the vehicle or exiting the vehicle and walking away). There are no facts present here which indicate that Scales was being detained by the police at the scene: no requests were made of Scales, no use of force or display of authority was directed at Scales, and Scales could have left the scene at any time prior to Sergeant Moody arresting him on the warrant. *See Sum*, 199 Wn.2d at 653.

Scales relies heavily on Sergeant Moody's statement that "the officers should have their cars out of the way soon so that the couple could go to dinner," and that Sergeant Moody never explicitly told Scales that he was free to leave the parking lot by some means other than his vehicle. CP at 61. However, Sergeant Moody's statement strongly implies that Scales' inability to drive out of the parking lot was incidental to the police cars being there for the shooting investigation—not for the purpose of detaining Scales. Further, nothing in Sergeant Moody's statement would indicate to an objective observer that Sergeant Moody was requiring Scales to stay in the parking lot or maintain the police contact. Finally, there is no requirement that law enforcement officers expressly inform a person with the words that they are free to leave a contact. *See Sum*, 199 Wn.2d at 653 ("[A] person

7

has been seized as a matter of independent state law if, based on the totality of the circumstances, an objective observer could conclude that the person was not free to leave, to refuse a request, or to otherwise terminate a police encounter due to law enforcement's display of authority or use of physical force.").

Scales has failed to meet his burden to show that he was subject to an unlawful seizure. Accordingly, we affirm the trial court's ruling denying Scales' CrR 3.6 motion to suppress.

B.      WRITTEN ORDER FOLLOWING BENCH TRIAL

Scales also argues that the failure to enter written findings of fact and conclusions of law requires remand for entry of a written order.

CrR 6.1(d) requires entry of written findings of fact and conclusions of law following a bench trial. When the trial court fails to comply with CrR 6.1(d), remand for entry of findings and conclusions is the proper remedy. *State v. Head*, 136 Wn.2d 619, 622, 624, 964 P.2d 1187 (1998). Because the trial court failed to enter written findings of fact and conclusions of law, we remand to the trial court for entry of a written order that complies with CrR 6.1(d).[3]

The trial court did not err by denying Scales' CrR 3.6 motion. Accordingly, we affirm Scales' conviction but remand for the trial court to enter written findings of fact and conclusions of law for the bench trial it conducted.

---

[3] We note that Scales waived "his right to appeal all other issues" besides a challenge to the trial court's ruling denying his motion to suppress evidence. CP at 15. This waiver was specifically initialed by Scales as part of his waiver and agreement to a stipulated facts bench trial. Both Scales and his attorney signed the waiver and agreement. However, while Scales may have waived all other appealable issues, Scales' waiver did not relieve the trial court of its obligation to enter written findings of fact and conclusions of law following the bench trial.

No. 58503-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, P.J.

We concur:

Glasgow, J.

Price, J.